Jerry **VANDIVER,** Plaintiff,

v.

Bill **MARTIN, et al.,** Defendants.

No. 03–CV–70778.

United States District Court, E.D. Michigan, Southern Division.

Feb. 12, 2004.

Jerry VanDiver, E.C. Brooks Correctional Facility, Muskegon Heights, MI, pro se.

Diane M. Smith, Michigan Department of Attorney General, Corrections Divison, Lansing, MI, for Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

CLELAND, District Judge.

This case was referred to United States Magistrate Judge Donald A. Scheer pursuant to 28 U.S.C. § 636(b)(1)(B). There are two pending motions to dismiss in this case, one filed by Defendants Bill Martin, Jann Epp, Betty Glaspen, and another filed by Defendant Correctional Medical Services [Dkt. ## 24 & 25]. Magistrate Judge Scheer issued a report and recommendation on December 16, 2003. His report recommends dismissing the complaint against Defendants Debruyn and King for Plaintiff's failure to properly serve Defendants within 120 days after the filing of the complaint under Federal Rule of Civil Procedure 4(m). (12/16/03 R & R at 1.) The report also recommends granting both motions to dismiss for failure to exhaust pursuant to 42 U.S.C. § 1997e(a). (*Id.* at 1.)

Plaintiff filed timely objections to the magistrate judge's report and recommendation, and Defendants have not filed responses to his objections. For the reasons set forth below, the court will adopt the magistrate judge's report and recommendation. It will dismiss, without prejudice, the complaint against Defendants Debruyn and King for failure to effect service under Fed.R.Civ.P. 4(m) and it will grant the two pending motions to dismiss based on Plaintiff's failure to exhaust administrative remedies.

## I. BACKGROUND

Plaintiff is a prisoner in the custody of the Michigan Department of Corrections and is currently incarcerated at the E.C. Brooks Correctional Facility. Plaintiff filed this action under 42 U.S.C. § 1983, on February 27, 2003, against Defendants, who are, or were, all employed by the Michigan Department of Corrections. Plaintiff claims that Defendants were indifferent to his serious medical needs regarding his feet and footwear while he was incarcerated at the Southern Michigan Correctional Facility in February 2001. Plaintiff alleges that Defendants' deliberate indifference toward his health resulted in his increased injury and suffering in violation of the Eight Amendment of the United States Constitution. Plaintiff seeks damages, a declaratory judgement, and injunctive relief against Defendants.

On February 26, 2003, Magistrate Judge Paul J. Komives granted Plaintiff's motion to proceed in forma pauperis [Dkt. # 2]. In the same order, Magistrate Judge Komives ordered the U.S. Marshal to serve a copy of the complaint and summons on Defendants, including Defendants Debruyn and King. The U.S. Marshal Service mailed copies of the summons and complaint to Defendants Debruyn and King on February 27, 2003 [Dkt. # 4]. On March 10, 2003, both summonses were returned to the U.S. Marshal unexecuted because Defendants Debruyn and King no longer worked at the Michigan Department of Corrections [Dkt. ## 5 & 6]. There is no evidence that Plaintiff took any action regarding service of process on Defendants Debruyn or King, from March 10, 2003 until July 14, 2003. However, on July 15, 2003, Plaintiff requested that the clerk enter a default against Defendants Debruyn and King, despite the fact that these Defendants had not been served [Dkt. # 32]. Three days later, Plaintiff's request for an entry of default against Defendants Debruyn and King was denied because these Defendants were never served [Dkt. # 33]. During the five months following the court's denial of Plaintiff's request for entry of default, from July 18, 2003, through

December 16, 2003, Plaintiff apparently took no action regarding service of process on Debruyn and King. Plaintiff offers no evidence of any attempts to ensure proper service of Defendants Debruyn and King, despite notice that they had not been served.

## II. STANDARDS

### A. Service of Process Under Rule 4(m) of Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 4(m) governs the time limit for service of process on a defendant. Its relevant language provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

### B. Failure to Exhaust Administrative Remedies under 42 U.S.C. § 1997(e)

■ Under 42 U.S.C. § 1997e(a), "[n]o action may be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As long as the prison system has an administrative process that will review a prisoner's complaint, the prisoner must exhaust his prison remedies. *Wyatt v. Leonard,* 193 F.3d 876, 878 (6th Cir.1999). To comply with the exhaustion requirement, a prisoner must file a grievance against the person or persons he ultimately seeks to sue. *Curry v. Scott,* 249 F.3d 493, 505 (6th Cir.2001).

### C. Review of Magistrate Judge's Report and Recommendations

The filing of timely objections requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). *See United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). This *de novo* review, in turn, requires this court to re-examine all the relevant evidence previously reviewed by the magistrate to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). The court may "receive further evidence" if desired. *Id.*

■ A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context. A party who files timely objections to a magistrate's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Walters,* 638 F.2d at 949–50. The Supreme Court upheld this rule in *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), a habeas corpus case. The Supreme Court noted that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on

those issues-factual and legal-that are at the heart of the parties' dispute." *Id.* at 147, 106 S.Ct. 466 (footnote omitted). Furthermore, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all objections a party may have." *Smith v. Detroit Fed'n of Teachers, Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987).

## III. DISCUSSION

### A. Failure to Properly Serve Defendants Debruyn and King Under Rule 4(m)

Plaintiff's first four objections relate to the issue of whether Plaintiff has fulfilled his burden to ensure service of process under Fed.R.Civ.P. 4(m). First, he argues that the Michigan Department of Corrections ("MDOC") should have accepted service on behalf of Defendants Debruyn and King. Second, he claims that it was the prison's responsibility to inform the court why the summons was returned unexecuted. Third, he argues that he was "unaware of his failure to serve [the] summons and complaint on defendant[s] King and Debruyn." (Pet'r. Obj. at 4.) Fourth, he claims that MDOC intentionally refused to accept service for Defendants Debruyn and King because he had exhausted his administrative remedies with regard to those Defendants.

Because Plaintiff is proceeding in forma pauperis, these objections are governed by the Sixth Circuit's holding in *Byrd v. Stone,* 94 F.3d 217 (6th Cir.1996), a case cited by the magistrate judge. *See also* 28 U.S.C. § 1915(d) (requiring officers of the court to issue and serve all process for in forma pauperis plaintiffs). In *Byrd,* the plaintiff was a disabled man formerly employed by the U.S. Department of the Army Tank Automotive Command ("TACOM") who sued TACOM under Title VII

of the Civil Rights Act of 1964. *Id.* at 218. The plaintiff in *Byrd,* like Plaintiff in this case, was proceeding in forma pauperis. *Id.* After the plaintiff in *Byrd* obtained in forma pauperis status, the clerk's office alerted the plaintiff that his summons would be forwarded to the U.S. Marshal's Office for completion of service. *Id.* The plaintiff subsequently contacted the U.S. Marshal's Office one week later to inquire whether service of process had been completed, and the U.S. Marshal's office told him that the matter was being "taken care of" even though the Marshal Service had not received a summons, nor attempted to effectuate service on the defendant. *Id.* Consequently, the plaintiff in *Byrd* was misled into believing that a summons and complaint would be served. *Id.*

Two months later, the district court granted the defendant's motion to dismiss based on the plaintiff's failure to effect service of process within 120 days as required by Rule 4(m). The lower court rejected the plaintiff's argument that he had shown good cause for failing to effect service because he reasonably relied on the notice sent to him by the U.S. Marshal. The plaintiff appealed and the Sixth Circuit reversed the district court, holding that, although the plaintiff generally bears responsibility for appointing an appropriate person to serve a copy of his complaint and summons upon a defendant, a plaintiff proceeding in forma pauperis is relieved of the burden to serve process once reasonable steps have been taken to identify the defendants named in the complaint. *Id.* at 219.

Other circuits have also confronted the issue of applying Rule 4(m) to prisoners proceeding in forma paupers. For example, the Seventh Circuit examined this issue in *Sellers v. United States,* 902 F.2d 598 (7th Cir.1990). In *Sellers,* a case with similar facts to those in the current case, the plaintiff proceeded in forma pauperis

in a *Bivens* action against a former prison warden and former prison guards. 902 F.2d at 600. The plaintiff in *Sellers* did not know the addresses of the guards or warden because they all had left the prison before the defendant filed suit. Thus, the plaintiff took the reasonable step of telling the U.S. Marshal where he believed each defendant had gone. *Id.* The plaintiff typed a note on to the summons for one defendant indicating where the defendant was on temporary assignment and where the defendant should have been at the time the U.S. Marshal would serve him. *Id.* at 602. The Seventh Circuit, held that the U.S. Marshal only needed sufficient information from the prisoner to identify the defendants, and that a failure by the Marshal to serve the defendants constituted automatic "good cause" for a plaintiff proceeding in forma pauperis. *Id.* at 602. The court relied on relevant and important policy concerns in finding that the plaintiff had good cause for not obtaining the current addresses for former prison employee-defendants. Specifically, prison guards typically do not want prisoners to have their home addresses and it is often very difficult, if not impossible, for prisoners to learn the addresses of such employees. The Seventh Circuit noted:

> [T]he Bureau of Prisons is reluctant to tell prisoners even the current place of employment of their former guards. This is a sensible precaution, for prisoners aggrieved by guards' conduct may resort to extra-legal weapons after release if they do not deem the results of the litigation satisfactory. Prisoners also have friends not noted for their scruples. Although the Department of Justice affords means to learn the addresses of its employees in order to serve them, these are sufficiently complex that even lawyers often trip up.

*Id.*

The court concluded that use of the U.S. Marshal to effect service alleviated two concerns involved in prisoner litigation: (1) the security risks inherent in providing prisoners with addresses of people formerly employed by the state; and (2) the reality of prisoners getting the "runaround" when they attempt to access information through the government. *Sellers,* 902 F.2d at 602.

Another case in the Seventh Circuit, decided after *Sellers,* also dealt with facts similar to those at hand. *See Graham v. Satkoski,* 51 F.3d 710, 712 (7th Cir.1995). In *Graham,* a prisoner filed a § 1983 claim against a former state prison guard. The prisoner proceeded in forma pauperis and also relied upon the U.S. Marshal to serve the defendants, which they failed to do. *Id.* The Marshal Service attempted to serve the prison guard at the prison, but the attempt was unsuccessful because the defendant had left the employ of the prison. The district court subsequently dismissed the action pursuant to Rule 4(m) for failure to serve the defendant within 120 days. Plaintiff appealed.

The Seventh Circuit relied on *Sellers* and remanded the case back to the district court to determine if the Marshal Service could have obtained the new addresses of the defendants with reasonable efforts; otherwise, their failure to do so would automatically have constituted "good cause" under Rule 4(m). *Id.* at 713. The Seventh Circuit reasoned that, although a state prison may be justifiably reluctant to provide employee addresses to a prisoner due to security concerns, it hardly can claim the same reluctance in providing the information to the U.S. Marshal Service or other federal agencies. *Id.* In other words, if the Marshal is able to obtain another address from the former prison employee using reasonable methods, then the requisite showing of "good cause" is made. *Id.* The Seventh Circuit further noted, however, that "good cause" would

not be shown if the failure to serve process was due to the prisoner's failure to cooperate with the U.S. Marshal. *Id.*

Although the Ninth Circuit agrees that the Marshal's failure to effect service for a prisoner proceeding in forma pauperis constitutes "good cause," it considers the conduct of the plaintiff prisoner in effecting service. *See Puett v. Blandford,* 912 F.2d 270 (9th Cir.1990). The plaintiff in *Puett* requested proof of service from the Marshal 55 days after the court issued an in forma pauperis order directing the Marshal to serve defendants within 120 days, and the plaintiff immediately filed a motion requesting personal service of the defendants when he found out that the Marshal had not served the defendants. *Id.* at 271. The prisoner later sent a notice to be signed and returned to him by the Marshal indicating whether service was by mail or in person. *Id.* at 272. The Ninth Circuit held that the Marshal's failure to serve the defendants constituted "good cause" for the in forma pauperis plaintiff's failure to ensure timely service. *Id.* at 276. The Ninth Circuit reasoned that the Plaintiff's failure to obtain proof of service was not due to his neglect because he conscientiously took several steps to ensure that the defendants would be served: "[Plaintiff] obtained proof that the ... defendants were, indeed, at the address that he provided to the U.S. Marshal. He *repeatedly requested that the defendants be personally served when mail services failed.*" *Id.* (emphasis added).

The Second Circuit confronted a similar issue in *Romandette v. Weetabix Co., Inc.,* 807 F.2d 309 (2d Cir.1986). In *Romandette,* the plaintiff proceeded in forma pauperis, and his summons and complaint were forwarded for service to the U.S. Marshal to mail the summons to the defendant pursuant to Federal Rule of Civil Procedure 4(c)(2)(C)(ii). *Id.* at 309–10. One week later, the defendant asserted that the plaintiff failed to effect service in accordance with New York law that made service by mail ineffective in that situation under Fed.R.Civ.P. 4(d)(3). *Id.* at 310. The plaintiff then requested that the Marshal effect personal service, but the Marshal did not serve the defendant until three months after the case had been dismissed. *Id.* The Second Circuit noted that the plaintiff indicated his reliance on service by the Marshal as an incarcerated *pro se* litigant proceeding in forma pauperis, and that he also timely requested that the Marshal effect personal service. *Id.* In short, the court concluded that the plaintiff had good cause because he had done "everything in his power" to effect personal service through the U.S. Marshal. *Id.* at 311.

The Fifth Circuit adopted *Romandette's* reasoning by holding that "a plaintiff proceeding in forma pauperis is entitled to rely upon service by the U.S. Marshal and should not be penalized for failure of the Marshal's Service to properly effect service of process, *where such failure is through no fault of the litigant.*" *Rochon v. Dawson,* 828 F.2d 1107, 1110 (5th Cir. 1987) (emphasis added). Although the district court in *Rochon* dismissed the action for failure to prosecute, the Fifth Circuit stated the issue presented as "the extent to which a plaintiff proceeding in forma pauperis may rely upon the U.S. Marshal's Service to effect proper service of process on a defendant." *Id.* at 1109. The court further added, however, that "a plaintiff may not remain silent and do nothing to effectuate service. At a minimum, a plaintiff should request service upon the appropriate defendant *and attempt to remedy any apparent service defects of which a plaintiff has knowledge.*" *Id.* (emphasis added). The plaintiff in *Rochon* was aware that the U.S. Marshal's attempts at serving the defendant by mail had been unsuccessful. Nevertheless, he failed to

request that the Marshal properly serve the appropriate defendant. *Id.* As a consequence, the court upheld the district court's dismissal of the action because of the plaintiff's failure to properly serve the defendant. *Id.* The court concluded that the plaintiff's own "inaction and dilatoriness" led to the defendant not being served. *Id.*

This court finds the reasoning of the Second, Fifth, and Ninth Circuits cases cited above to be applicable and convincing under the current facts and circumstances. In those cases, the plaintiffs' actions or inactions carried the most weight in determining whether "good cause" was shown. In *Puett* and *Romandette,* the plaintiffs took some action beyond merely identifying the defendants' names for the U.S. Marshal and the Marshal's failure to effect service was not plaintiffs' fault. The plaintiffs in those cases took reasonable, conscientious steps to ensure, as best they could, that the defendants would be served.

The court finds that the rule announced by the Sixth Circuit in *Byrd* is also consistent with the cases cited above. In *Byrd,* the plaintiff established good cause based on his reliance on the misleading statement from the U.S. Marshal Service. The plaintiff demonstrated due diligence by, at a minimum, making a phone call to the U.S. Marshal to determine the status of the case, and he was misled by the Service. 94 F.3d at 218. Any lack of further diligence and inquiry on his part was not his fault because he was misled into believing that service had been or would be completed.

The court also takes note of two unpublished decisions from the Sixth Circuit which apply the holding in *Byrd.* First, in *Donaldson v. United States,* the district court granted plaintiff's motion to proceed in forma pauperis but failed to issue the plaintiff's process to a Marshal. 35 Fed. Appx. 184, 2002 WL 987904, *1 (6th Cir.

May 10, 2002). However, after ordering the plaintiff to file a complaint, the district court ordered the plaintiff to show cause why his action should not be dismissed for failure to timely serve the defendant under Rule 4(m). *Id.* Although, the plaintiff reminded the district court that he was proceeding in forma pauperis and requested service by the U.S. Marshal, the district court dismissed his claim for failure to serve. *Id.* The Sixth Circuit held that "where a plaintiff is proceeding as a pauper, the district court bears the responsibility for issuing the plaintiff's process to a United States Marshal who must effect service upon the defendants." *Id.* (citing 28 U.S.C. § 1915(d) and *Byrd,* 94 F.3d at 220). Because the district court did not issue the plaintiff's process, it did not fulfill its statutory responsibilities and dismissal under Rule 4(m) was not appropriate. *Id.*

Likewise, in *Williams v. McLemore,* the Sixth Circuit refused to affirm the district court's dismissal of an in forma pauperis plaintiff's complaint because the lower court did not issue the plaintiff's summons to the Marshal. 10 Fed.Appx. 241, 2001 WL 111593, *2 (6th Cir. Feb.1, 2001). The district court in *Williams* failed to fulfill its statutory responsibilities because it should have issued process to the U.S. Marshal who would then have served the defendant, rather than sending the plaintiff a letter stating that it was the plaintiff's responsibility to serve his amended complaint on the defendant. *Id.*

The facts in the current case differ significantly from those in *Donaldson* and *Williams.* Unlike *Donaldson* and *Williams* the U.S. Marshal attempted to service process on the Defendants. However, the summonses were returned unexecuted because the named Defendants no longer worked for the Michigan Department of Corrections. This is not a case

where the court fail to even issue process to the Marshal.

Likewise, the Seventh Circuit cases also support the court's decision. Those cases serve best to demonstrate the difficulties prisoner plaintiffs may encounter in seeking information when they try to be diligent and conscientious in ascertaining important information about their cases. However, the Seventh Circuit cases do not require an automatic finding of good cause if the Marshal fails to effect service for an in forma pauperis plaintiff. In fact, the *Graham* court specifically stated that good cause for failure to effect service would not exist for a plaintiff proceeding in forma pauperis "if the failure to serve process was due to [his] failure to cooperate with the Marshals Service." 51 F.3d at 713. This statement is consistent with the approach of examining the plaintiffs' conduct before automatically finding good cause when the U.S. Marshal Service fails to effect service of process for an in forma pauperis prisoner plaintiff.

The court finds that Plaintiff is at fault for not ensuring that Defendants Debruyn and King were served. Plaintiff remained silent after being put on notice that these Defendants had not been served.[1] Furthermore, he has provided no evidence that he took any steps to ensure that the Marshal had served Defendants Debruyn and King. Although Plaintiff initially took reasonable steps to identify both defendants Debruyn and King on page two of his complaint by handwriting their addresses [Dkt. # 3], he did nothing else after Magistrate Judge Komives ordered the U.S. Marshal to serve Defendants Debruyn and King.

In fact, over the course of the 120 days following the order, Plaintiff received several filings from the court, and also made filings of his own. Specifically, on April 11, 2003, Defendant Correctional Medical Services filed a motion to dismiss [Dkt. # 15]. On April 23, 2003, Plaintiff requested more time to respond to this motion to dismiss [Dkt. # 16]. On May 22, 2003, Plaintiff responded to the April 11 motion to dismiss [Dkt. # 18]. By June 13, 2003, Plaintiff had also responded to a motion to dismiss by Defendants Glaspen, Epp, and Martin [Dkt. # 27]. At this point, Plaintiff still had received nothing related to Defendants Debruyn and King. Yet, Plaintiff took no action to determine whether Debruyn and King had even been served.

The record shows that Plaintiff has been a party in at least two prior lawsuits and he should have inquired, at some point before December 2003, about the status of Debruyn and King, especially as the 120 day service of process deadline under Rule 4(m) rapidly approached.

Finally, Plaintiff filed an "Affidavit for Clerk's Entry of Default" on July 15, 2003, requesting an entry of default against Defendants Debruyn and King, even though they had not been served [Dkt. # 32]. Three days later, Plaintiff's request for entry of default against Defendants Debruyn and King was denied [Dkt. # 33]. On December 16, 2003, Magistrate Judge Scheer filed his "Report and Recommendation" recommending that the court dismiss the complaint against Defendants Debruyn and King because Plaintiff failed to serve them within 120 days under Rule 4(m) [Dkt. # 35]. During the five month period between July 18, 2003, and December 16, 2003, however, Plaintiff took no further action regarding service of process on Debruyn and King even though Plaintiff had notice that Debruyn and King

---

1. Plaintiff claims that he did not know that the summonses for Defendants Debruyn and King were returned unexecuted. However, the July 18, 2003 "Notice of Denial of Request for Clerk's Entry of Default" was mailed to Petitioner. (*See* Dkt. # 33.)

were never served with the complaint through the clerk's "Notice of Denial of Request for Clerk's Entry of Default," which was mailed to Plaintiff on July 18, 2003 [Dkt. # 33]. He provides no evidence that he ever attempted to contact the Marshal to follow up on the un-executed summonses. As such, Plaintiff did not do "everything in his power" to effect personal service through the U.S. Marshal.

Plaintiff's failure to act or to even notify or request that the Marshal's attempt to locate Defendants Debruyn and King supercedes any neglect on behalf of the government agency. Although the Marshal had a duty to serve Defendants Debruyn and King, Plaintiff could not sit by in silence when he knew that service had not been executed. Plaintiff, just as the plaintiff in *Puett*, could have requested that the Marshal follow up and attempt personal service once the summonses were returned unexecuted. *See Puett*, 912 F.2d at 271–72. Plaintiff's silence and inaction do not constitute reasonable cooperation with the Marshal in order to ensure timely service. In this case, Plaintiff's silence and inaction was not reasonable and was a superceding cause for the failure of timely service. Dismissing Plaintiff's claims against Defendants Debruyn and King without prejudice does not penalize Plaintiff for failure of the Marshal to effect service because he took no reasonable steps to follow up after learning that the summonses were returned unexecuted.

The court agrees with the Fifth Circuit in that "a plaintiff may not remain silent and do nothing to effectuate service. At a minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which a plaintiff has knowledge." 828 F.2d at 1110. This is not a case where the plaintiff can rely on the Marshal's failure to act as good cause for failure to serve Defendants within 120 days as required by Rule 4(m). Accordingly, the Court will adopt the magistrate judge's recommendation that the complaint be dismissed against Defendants Debruyn and King without prejudice because Plaintiff has not shown "good cause" why he has failed to serve them within 120 days under Rule 4(m).

**B. Failure to Exhaust Administrative Remedies under § 1997(e)**

■ Plaintiff's objections almost entirely ignore the magistrate judge's recommendation to dismiss the complaint against Defendants Martin, Epp, Glaspen, and Correctional Medical Services for failure to exhaust administrative remedies under § 1997e. In his complaint, Plaintiff named Defendant Martin only as a defendant under the theory of respondeat superior. However, the general rule when seeking monetary damages under § 1983 is that a claimant must aver some specific, personal wrongdoing on the part of the individual defendant. *Rizzo v. Goode*, 423 U.S. 362, 376, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Theories of vicarious liability or respondeat superior are insufficient. *Id.* Defendants Epp and Glaspen denied Plaintiff's grievance at steps I and II of the grievance review procedure, but Plaintiff did not name Defendants Epp and Glaspen in the grievance itself. (12/16/03 R & R at 4.) Defendants Epp and Glaspen played no role in the allegations contained in the complaint. (*Id.* at 5.)

■ Lastly, Plaintiff's "Objection # 5" is the only objection pertaining to the magistrate judge's recommendation to dismiss the complaint against Defendants Martin, Epps, Glaspen, and Correctional Medical Services because Plaintiff failed to exhaust available administrative remedies. It, however, also lacks merit. In his fifth objection, Plaintiff argues that Defendant Correctional Medical Services was named

throughout all stages of the grievance process. However, the court finds that Plaintiff did not name Correctional Medical Services in his Step 1 grievance. In his Step 1 grievance, Plaintiff consistently grieves the conduct of Defendants Debruyn and King throughout his description of his complaints. Plaintiff makes no mention of Correctional Medical Services in Step I of his grievance until the final paragraph where he states: "Should this matter not be resolved and I become subject to foot Amputation, Nurse King, Health Manager Susan Debruyn, Health Care and CMS will be liable in a large monetary damages." Plaintiff's mention of Defendant CMS, however, is not done "against the person or persons he ultimately seeks to sue." *Curry*, 249 F.3d at 505. Simply listing the parties that Plaintiff will sue *if* the matter is not resolved and *if* Plaintiff undergoes further injury, does not name an individual responsible for an alleged injury in the grievance procedure. Nor is it sufficient to establish what action or inaction taken by CMS is being challenged. The grievance does not indicate CMS as a party who caused his injuries and against whom Plaintiff *presently* seeks to recover. Therefore, the court agrees with the magistrate judge that Plaintiff has failed to show that he pursued grievances against Defendants Martin, Epp, Glaspen, and Correctional Medical Services at all levels of administrative review, or that Plaintiff was precluded from doing so.

## IV. CONCLUSION

IT IS ORDERED that the December 16, 2003, "Magistrate Judge's Report and Recommendation" [Dkt. # 35] is ADOPTED.

IT IS FURTHER ORDERED that Defendants Martin, Epp, and Glaspen's May 30, 2003 "Motion to Dismiss for Failure to Exhaust Administrative Remedies" [Dkt. # 24] is GRANTED.

IT IS FURTHER ORDERED that Defendant Correctional Medical Services' April 11, 2003 "Motion to Dismiss Under FRCP 12(b)(6) and 42 U.S.C. § 1997e" is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.