James POWELL, Jr.,
Plaintiff–Appellant,

v.

Donald STARWALT,
Defendant–Appellee.

No. 88–1992.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 5, 1989.
Decided Jan. 31, 1989.

James P. Brinkoetter, Brinkoetter & Barnes, P.C., Decatur, Ill., for plaintiff-appellant.

Gary L. Borah, Heyl, Royster, Voelker & Allen, Springfield, Ill., for defendant-appellee.

Before WOOD Jr., COFFEY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

James Powell, Jr., filed this diversity suit in June 1986 against Donald Starwalt, his former employer. A plaintiff has 120 days

to serve a copy of the complaint on the defendant:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice....

Fed.R.Civ.P. 4(j). The district judge dismissed this case on December 30, 1986, for failure to serve Starwalt, and granted Powell "leave to refile upon a showing of good cause". In February 1987 Powell filed such a motion, accompanied by an affidavit of Perry Sanford Albin, his lawyer until December 1986. Albin swore that he had not served Starwalt because he had been unable to learn Starwalt's address. The court reinstated the case; Starwalt was served on April 12, 1987.

Albin had lied to the court. Starwalt produced documents showing that Albin knew Starwalt's address throughout the period, as Powell's new counsel conceded. This is Powell's second suit against Starwalt arising out of the same events. Powell first filed suit in Illinois in August 1983. Documents gathered in that case, including a deposition of Starwalt and Starwalt's answers to Powell's interrogatories, contain his current address.

A magistrate promptly concluded that because Albin knew Starwalt's address, "good cause" did not support the delay in service. He recommended that the district court dismiss the case a second time. This the court did, with prejudice. The judgment dismisses the case without qualification, and under Fed.R.Civ.P. 41(b), "[u]nless the court in its order for dismissal otherwise specifies, ... any dismissal ..., other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits." See *Kimmel v. Texas Commerce Bank*, 817 F.2d 39 (7th Cir.1987). The district court treated failure to show "good cause" for slow service as a sufficient reason to pre-

clude litigation on the merits, even if the eventual service was timely under state law—which governs periods of limitations in diversity matters, including the time for service when the state requires service before the end of the period. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949).

Rule 4(j) tells the court to dismiss the case without prejudice when service takes more than 120 days, unless the delay is attributable to "good cause". Dismissal is obligatory ("the action *shall* be dismissed"). *Lovelace v. Acme Markets*, 820 F.2d 81, 84 (3d Cir.1987) (citing the legislative history of Rule 4(j), which was added by statute in 1983); *Norlock v. City of Garland*, 768 F.2d 654, 657–58 (5th Cir. 1985). In federal practice a suit is "commenced" by filing the complaint (see Rule 3), which satisfies the statute of limitations. *West v. Conrail*, 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987). Delay in service means that the defendant may be in the dark although the period of limitations has run; 120 days is the normal limit to this delay, although Rule 6(b) holds out the possibility of extension on motion. Rule 4(j) also defines diligence in prosecution. Rules of this character work best when applied mechanically, as the language of Rule 4(j) suggests. Powell could avoid dismissal only by showing good cause for the failure to serve Starwalt. Yet he showed no cause at all. His lawyer, Perry Albin, was asleep at the switch, the opposite of good cause. See *Braxton v. United States*, 817 F.2d 238 (3d Cir.1987) (an attorney's inadvertent failure to serve process is not "good cause" under Rule 4(j)); *Wei v. Hawaii*, 763 F.2d 370 (9th Cir.1985) (same). Neglect by Powell's agent is no reason to impose burdens on his adversary. Powell chose Albin and could have supervised him; Starwalt had no such privilege; Albin's neglect rests on Powell's shoulders. *Link v. Wabash R.R.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

Rule 4(j) provides, however, for dismissal "without prejudice". The district court ap-

pears to have assumed that Rule 4(j) has a different structure: automatic dismissal, and if there is "good cause" then the dismissal should be without prejudice. The district court did not explain why it took "good cause" as a sine qua non for dismissal without prejudice.

A bright-line approach to dismissal, which *Lovelace* and *Norlock* adopt and we accept, implies taking the remainder of Rule 4(j) seriously too. Automatic dismissal is more palatable if the plaintiff can use any time remaining in the period of limitations. If 120 days elapses without service, the plaintiff should be told as a matter of course that dismissal lies in store. When the plaintiff shows "good cause" for delay, the case should not be dismissed; when there is no good cause, the case should be dismissed without ado and without prejudice. If the delay has been so long that it signifies failure to prosecute—or if the delay entails disobedience to an order of the court—then dismissal may be with prejudice under Rule 41(b), which covers "failure of the plaintiff to prosecute or to comply with these rules or any order of court". Neither the magistrate nor the district judge mentioned Rule 41(b) or suggested that six months' delay in effecting service, as opposed to the four months allowed under Rule 4(j), amounted to "failure to prosecute". Rule 4(j) provides that dismissals based on *that* rule are "without prejudice"; the possibility of a more serious sanction for a more serious offense does not implicitly turn "good cause" into a precondition for dismissal without prejudice.

"Without prejudice" does not mean "without consequence". If the case is dismissed and filed anew, the fresh suit must satisfy the statute of limitations. That will be a problem for Powell. The incident of which he complains occurred in September 1981. He filed the state case in August 1983, with one month left on the statute of limitations, and dismissed it on the eve of trial in June 1986. Illinois law, Ill.Rev. Stat. ch. 110 ¶ 13–217, gave him one year to refile, which expired (if this suit be disregarded) in June 1987. Moreover, the year is an outer limit for refiling, not a fresh statute of limitations. State courts

have held that it authorizes only one additional filing, not a series of filings if the first should prove defective. See *Gendek v. Jehangir*, 119 Ill.2d 338, 116 Ill.Dec. 230, 518 N.E.2d 1051 (1988); *Phillips v. Elrod*, 135 Ill.App.3d 70, 73–74, 88 Ill.Dec. 470, 473, 478 N.E.2d 1078, 1081 (1st Dist.1985). Perhaps these decisions do not govern when, as here, service is completed within the year in the first-filed renewal, even though that case ultimately comes to grief. We do not pursue the matter. The district judge did not dismiss *this* suit with prejudice on the ground that a *future* suit would be barred by the statute of limitations.

Just as speculation about the outcome of a third suit does not justify dismissing this one with prejudice, so the temptation to peer into the future does not justify failure to apply Rule 4(j). Powell wants us to see the obstacle the next suit will encounter and direct the district judge to disregard the absence of "good cause". This amounts to a plea to disdain the Rules of Civil Procedure when they have consequences. Consequences are the goads to compliance; to use adverse effects as a reason to overlook the requirements is to reduce the incentive to comply and make litigation even longer and more complex than it is. Cf. *Torres v. Oakland Scavenger Co.*, —— U.S. ——, 108 S.Ct. 2405, 2409–10, 101 L.Ed.2d 285 (1988) (Scalia, J., concurring). Powell did not comply and must suffer the prescribed consequence.

Albin will be liable to Powell for malpractice if his delay blocks the pursuit of a claim that otherwise would have succeeded. Filing a false affidavit brings more than civil liability, however. This court will require Albin to show cause why he should not be removed from our Bar, of which he has been a member since 1979. On December 5, 1988, the Supreme Court of Illinois accepted Albin's resignation from the Illinois Bar, apparently in settlement of disciplinary proceedings covering a different delict. Concern for the integrity of the district court's processes leads us to hope that the United States Attorney also will give this incident careful scrutiny.

The judgment is vacated, and the case is remanded with instructions to dismiss the complaint without prejudice.