W. Foster **SELLERS**,
Plaintiff–Appellant,

v.

**UNITED STATES** of America, et al.,
Defendants–Appellees.

No. 88–2197.

United States Court of Appeals,
Seventh Circuit.

Submitted April 5, 1990.
Decided May 16, 1990.

---

**7.** *Centor Contractors*, 831 F.2d at 1312 (quoting    *Penntech Papers*, 706 F.2d at 24).

W. Foster Sellers, pro se.

Richard H. Lloyd, Asst. U.S. Atty., East St. Louis, Ill., for U.S.

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

When the Bureau of Prisons "locked down" the federal prison at Marion, Illinois, in 1983, it restricted the volume of personal materials inmates could keep in their cells. It offered to store the excess or send it to someone of the inmate's choice. W. Foster Sellers initially declined to designate a recipient, so guards put at least five boxes of his goods in storage. Later he designated Judge Fairchild of this court as their recipient, which the guards took as a joke and refused to implement. More than a year after the lockdown, with Sellers still not cooperating, the guards sent his things to his wife. According to Sellers, somewhere in this process the guards stole or lost an oil painting of his wife, 41 law books, an almanac, an ice bucket, a combination lock, a pair of sunglasses, and a leg supporter. He sued not only three guards but also the warden on the theory that the loss violated the Constitution. See *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Chief Judge Foreman allowed Sellers to proceed in forma pauperis and directed the Marshals Service to serve process "as directed by plaintiff". Sellers did not know the addresses of the guards or former Warden Miller, all of whom left Marion before he filed suit. He told the Marshals Service where he believed each had gone. The Marshal mailed a copy of the complaint and summons to the former warden, who declined to sign the acknowledgement. Under Fed.R.Civ.P. 4(c)(2)(C)(ii) this means that the plaintiff must use an alternative method (such as hand delivery) at the defendant's expense. The Marshal did not follow up in serving Miller. Apparently the Marshals Service did not obtain the addresses of the other three defendants and none was served. Magistrate Meyers, then presiding by virtue of consents under 28 U.S.C. § 636(c), dismissed the case with respect to all four defendants for failure to perfect service within 120 days, as Fed.R. Civ.P. 4(j) requires in the absence of "good cause". Magistrate Meyers wrote that Judge Foreman's order to serve "as directed by plaintiff" meant that Sellers had to furnish the Marshal with the defendants' addresses. Magistrate Meyers did not mention the fact that Sellers had furnished enough information to enable the Marshal to mail the complaint and summons to former Warden Miller.

On his own initiative, Magistrate Meyers substituted the United States as a defendant and converted the case from a *Bivens* action to one under the Federal Tort Claims Act. The United States, which received notice as soon as the suit was filed, has not argued that the substitution is untimely.

See Fed.R.Civ.P. 15(c). Magistrate Frazier later conducted a bench trial. (Magistrate Meyers had been appointed to the bankruptcy court in the interim.) He concluded that the guards lost the oil painting, almanac, ice bucket, sunglasses, lock, and leg supporter; he did not mention the law books. After a separate proceeding on damages, Magistrate Frazier awarded Sellers $100 for the painting and $5 for the almanac; he made no award for the ice bucket, sunglasses, lock, or leg supporter, because these had been omitted from Sellers' administrative claim under the Tort Claims Act. Sellers argues on appeal that (a) $100 is too little for the painting, (b) the magistrate ignored his claim concerning the law books, and (c) it was error to dismiss the four individual defendants.

██ Sellers insists that the painting is worth $200 rather than $100. Valuation of works of art is difficult business, and we are not persuaded that the trier of fact committed clear error. Nothing in the record suggests that the painting had any market value; although Sellers attached the value of $200 to it, perhaps for sentimental reasons, the magistrate was not required to accept it. *Taliferro v. Augle*, 757 F.2d 157, 161–62 (7th Cir.1985). The magistrate also was entitled to exclude from evidence a letter from a prisoner-artist supporting Sellers' valuation. See *DeRance, Inc. v. PaineWebber Inc.*, 872 F.2d 1312, 1324 (7th Cir.1989). The letter was hearsay and speculative to boot.

██ With respect to the law books, however, Sellers has a point. Although Fed.R.Civ.P. 52(a) requires the court to "find the facts specially", the magistrate did not mention Sellers' argument that the guards lost his books. Perhaps he overlooked the subject in the welter of confusing documents filed in this case. No matter the reason, however, we must remand for findings. Sellers' objections to the rulings admitting evidence of the inventories of his property are without substance, as is his contention that the defendants are liable on account of their refusal to send his possessions to Judge Fairchild. Federal judges are not prisoners' warehousemen.

The only question on remand under the Tort Claims Act is whether the government tortiously lost Sellers' books, and the magistrate is free to make whatever ruling the record requires on this subject. One may question whether substantial investment of judicial time in a case of this sort is appropriate. The Federal Courts Study Committee, picking up a suggestion in *Free v. United States*, 879 F.2d 1535, 1536 (7th Cir.1989), has recommended that claims of less than $10,000 under the FTCA be handled by a new small-claims court. *Report of the Federal Courts Study Committee* 81 (1990). See also *Savage v. CIA*, 826 F.2d 561, 563 (7th Cir.1987); *Tinker–Bey v. Meyers*, 800 F.2d 710 (7th Cir.1986). Until Congress acts on that recommendation, however, even the smallest claims concerning lost property must proceed using rules designed for large-stakes cases.

██ This leaves the contention that the suit should be revived with respect to the four original defendants. It is at least conceivable that these defendants may be held liable on account of the ice bucket, sunglasses, lock, and leg supporter, if Sellers can demonstrate that they got rid of his property with the state of mind required by *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Rule 4(j) provides that a suit shall be dismissed without prejudice if the plaintiff fails to effect service within 120 days, unless the plaintiff shows "good cause why such service was not made within that period". Whether "good cause" exists in a particular case is a matter of characterization that we review deferentially. *Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir.1988). Cf. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933–35 (7th Cir.1989) (en banc). Deference is not the same as abdication, however, and we examine the court's reasons to see whether they support its decision. *Del Raine v. Carlson*, 826 F.2d 698, 705 (7th Cir.1987). In this case, as in *Del Raine* (decided under the practice prevailing before Rule 4(j) was adopted in 1983), we conclude that the court did not articulate reasons adequate to support an order of dismissal.

Chief Judge Foreman told the Marshals Service to serve papers on Sellers' behalf. This is the practice we commended in *Del Raine*, 826 F.2d at 705, and it is expressly authorized by Fed.R.Civ.P. 4(c)(2)(B)(i). See also 28 U.S.C. § 566(c). Prison guards do not want prisoners to have their home addresses, and the Bureau of Prisons is reluctant to tell prisoners even the current place of employment of their former guards. This is a sensible precaution, for prisoners aggrieved by guards' conduct may resort to extra-legal weapons after release if they do not deem the results of the litigation satisfactory. Prisoners also have friends not noted for their scruples. Although the Department of Justice affords means to learn the addresses of its employees in order to serve them, these are sufficiently complex that even lawyers often trip up. See *Lewellen v. Morley*, 875 F.2d 118 (7th Cir.1989). Our impression from a series of cases is that prisoners appearing *pro se* get the runaround, no matter how hard they try to follow the Department's preferred methods of inquiry. Having the Marshal serve the papers enables the case to proceed while holding in confidence information in which the guards have a strong interest. Because the Marshals Service is part of the Department of Justice, 28 U.S.C. § 561, it should have ready access to the necessary information.

■ The Marshal needs from the prisoner information sufficient to identify the guard ("John Doe No. 23" won't do); once that information has been provided, the Marshal should be able to obtain a current business address and complete service. If the Department of Justice declines to furnish the address to its own employee the Marshal, that hard-nosed attitude satisfactorily explains a prisoner's inability to serve papers within 120 days. How is the prisoner to obtain information the Bureau of Prisons will not entrust to a Marshal? We join the Ninth Circuit in holding that when the district court instructs the Marshal to serve papers on behalf of a prisoner, the prisoner need furnish no more than the information necessary to identify the defendant. *Puett v. Blandford*, 895 F.2d

630, 635 (1990). The Marshal's failure to accomplish the task is automatically "good cause" within the meaning of Rule 4(j). See also *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir.1986); *Rochon v. Dawson*, 828 F.2d 1107, 1109–10 (5th Cir. 1987); and *Mondy v. Secretary of the Army*, 845 F.2d 1051, 1053 (D.C.Cir.1988), all holding that an indigent prisoner representing himself is entitled to rely on the Marshal to achieve service of process.

Magistrate Meyers believed that by telling the Marshal to serve papers "as directed by plaintiff", Chief Judge Foreman required Sellers to supply the defendants' addresses to the Marshal. This is not a natural interpretation of the language, which was addressed to the Marshal rather than Sellers. As *Rochon* holds, 828 F.2d at 1110, dilatory conduct by the prisoner in supplying identifying information flunks the good-cause requirement. Nothing suggests, however, that Sellers did less than his best to facilitate service. He told the Marshal enough about Miller to enable the Service to mail the documents to his address. Miller's refusal to acknowledge service, coupled with the Marshal's failure to follow up with personal service, is "good cause" under Rule 4(j). With respect to the other three defendants, Sellers supplied what information he had. Sellers typed this on the summons for John Wilson:

> In November, 1983, Lt. John Wilson was on temporary assignment at USP, Marion from USP, ATLANTA. It is believed that he is now back at USP, Atlanta. USP, Marion Personnel Office should have Wilson's forwarding address.

Someone from the Marshals Service wrote this in the portion of the summons reserved for the Marshal's remarks:

> USP ATLANTA—Per TRACY RoberTs, PErSONNeL SecreTARy, CHeCK EMPLOYee WORK LiST. NO SUCh NAMed PerSON WAS Listed.

Nothing written on the summons suggests that the Marshals Service checked the personnel office at Marion to see where Wilson had gone; nothing suggests that anyone picked up the phone to ask the Bureau of Prisons in Washington where he had

been posted. No one from the Marshals Service testified, so we do not know whether the Service undertook efforts not reflected on the summons. Chief Judge Foreman appointed the Marshals Service to be Sellers' instrument for service of process; its failure to carry out this task is "good cause" for the lack of prompt service.

*Bivens* actions against federal employees require personal service of process. *Del Raine,* 826 F.2d at 704; *Lewellen,* 875 F.2d at 122 n. *. The employees may have to pay judgments out of their own pocket. (Congress has not established a system of indemnification.) Neither the Marshals Service nor the Department of Justice is authorized to waive the statute of limitations for its employees, who are entitled to be annoyed when in 1990 someone appears on their doorsteps to summon them into litigation dealing with the disappearance of an ice bucket in 1983. As a technical matter, however, the statute of limitations is satisfied by filing the complaint even though the defendant does not get service immediately. *West v. Conrail,* 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987). Rule 4(j) allows whatever time beyond 120 days "good cause" requires; see also Fed.R. Civ.P. 6(b). *Floyd v. United States,* 900 F.2d 1045, 1046–48 (7th Cir.1990); *Powell v. Starwalt,* 866 F.2d 964 (7th Cir.1989). The delay in *Del Raine* was substantially longer (from 1973 to 1987). If wardens and guards do not like the prospect of discovering, many years after events, that they must stand trial on subjects they have forgotten, they should inform the Department of Justice that it is better to facilitate prompt service than to postpone the evil day. The Department's current policy of frustrating prisoners' attempts to accomplish service complicates litigation and, as this case illustrates, keeps suits alive for years after they could and should have been resolved.

█ The United States Attorney maintains that the judgment with respect to the individual defendants may be affirmed on the alternative ground that because the Tort Claims Act furnishes an adequate remedy, the Due Process Clause of the fifth amendment does not authorize a direct action against the jailers. This reasoning parallels *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled in part by *Daniels* ), and *Hudson v. Palmer,* 468 U.S. 517, 530–36, 104 S.Ct. 3194, 3202–05, 82 L.Ed.2d 393 (1984). Although the United States Attorney acknowledges that *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), rejected an argument that the FTCA ousted all *Bivens* suits within the scope of its coverage, he urges us to hold that it does not apply when the FTCA provides effective and complete remedies for negligent loss of property. He submits that *Carlson* has been overtaken by subsequent cases, not only *Parratt* and *Hudson,* but also others that have demonstrated greater willingness to infer from the provision of statutory remedies that direct constitutional actions are unnecessary or have been precluded. See *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). This is not the occasion to consider the question.

Although an appellee may urge, without taking a cross-appeal, any argument raised below that supports the judgment, see *Massachusetts Mutual Life Insurance Co. v. Ludwig,* 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976); *Jordan v. Duff & Phelps, Inc.,* 815 F.2d 429, 439 (7th Cir. 1987), this argument calls for an enlargement of the defendants' rights. Magistrate Meyers dismissed the claims against them without prejudice; if the United States Attorney's argument is correct, the complaint should have been dismissed with prejudice. In order to enlarge his rights under a judgment, a litigant must file a notice of appeal. *United States v. American Railway Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924). Although it is a nice question whether an appellee may make an argument that, if accepted, logically entails an enlargement of his rights, provided he is willing to accept a clean affirmance, see *United States*

*v. New York Telephone Co.,* 434 U.S. 159, 166 n. 8, 98 S.Ct. 364, 369 n. 8, 54 L.Ed.2d 376 (1977); Robert L. Stern, *When to Cross–Appeal or Cross–Petition—Certainty or Confusion?,* 87 Harv.L.Rev. 763 (1974), we bypass this too. To date the four individual defendants are not even parties. They did not make the *Parratt* argument or authorize the United States Attorney to do so. Prudence calls for a simple remand, not an extended discussion of a complex question of appellate jurisdiction, followed by resolution of a novel question of constitutional law. For all we know, these defendants may quickly establish that they had nothing to do with the disappearance, or that their deeds were at most negligent and therefore outside the scope of liability under *Daniels* and *Archie v. City of Racine,* 847 F.2d 1211, 1218–20 (7th Cir.1988) (en banc) (even "gross negligence" does not support recovery). It seems most unlikely, for example, that Sellers can establish the Warden's personal responsibility or the guards' intent, and he ought to consider Fed.R.Civ.P. 11 before he puts his $105 winnings at stake in an effort to get an extra $2 for a beat-up, Styrofoam ice bucket. Because this case may not survive the simple defenses, we shall postpone discussing the exotic ones.

The judgment is affirmed to the extent it awards Sellers $105 for the painting and almanac. The judgment is reversed and remanded to the extent the magistrate denied on the merits any recovery for the 41 books. The judgment is vacated to the extent it dismissed the four individuals as defendants. Further proceedings on remand shall conform to this opinion.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court and its fine opinion except with respect to the following matter that, in my view, is unnecessary to our disposition of this case. I respectfully decline to express a view on the appropriateness of the congressional determination that prisoners' small claims be subject to the Federal Tort Claims Act. *Supra* p. 4. Cf. *Tidewater Oil Co. v. United States,* 409 U.S. 151, 174, 93 S.Ct. 408, 421, 34 L.Ed.2d 375 (1972) (opinion of White, J.) (declining to join "the advisory to Congress reflecting one view of the relative merits of the Expediting Act").