**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PAUL PEMBERTON,

    Plaintiff - Appellant,

v.

ROBERT PATTON; JUSTIN JONES;
DEBBIE L. MORTON; MARK
KNUTSON; TIM WILKINSON; MR.
GENTRY; MR. WILLIAMS; REBECCA
A. ADAMS; C/O UNDERWOOD,

    Defendants - Appellees.

No. 15-7059
(D.C. No. 6:14-CV-00511-JHP-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.
_____

    Paul Pemberton, an Oklahoma state prisoner proceeding pro se, appeals the

district court's dismissal of his 42 U.S.C. § 1983 action. Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Mr. Pemberton is incarcerated at the Davis Correctional Facility (DCF), an Oklahoma state prison run by a private company, the Corrections Corporation of America (CCA). In this lawsuit, he claimed defendants violated his constitutional rights by (1) duplicating, outside of his presence, legal documents he gave to them for photocopying, which provided an opportunity for prison officials to read them or give advance copies to opposing parties, in violation of his Fourth Amendment right to be free of unreasonable searches and seizures; (2) returning grievances unanswered to frustrate (or "sabotage," as he repeatedly alleged) his attempts to exhaust administrative remedies and thereby facilitate a failure-to-exhaust defense, in violation of his First Amendment right of access to the courts and, in some instances, in retaliation for filing grievances; and (3) refusing to supply him with sufficient time and materials to prepare documents for filing in cases he was litigating or wanted to litigate, also in violation of his First Amendment right of access to the courts.

The district court permitted Mr. Pemberton to proceed *in forma pauperis* (*ifp*), which required the court to order the United States Marshals Service or another person to serve process. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3). The court appointed the Marshals Service, and Mr. Pemberton completed nine forms (one for each defendant) requesting service of process on each defendant. The only address he provided was: "in care of the Governor of Oklahoma at the State Capitol." A legal assistant at the Oklahoma Department of Corrections (ODOC) accepted service for three of the defendants: ODOC Director Robert Patton; Debbie Morton, a former

- 2 -

manager of the ODOC Administrative Review Authority; and Mark Knutson, the manager of the Administrative Review Authority. Process was returned unexecuted on the other six defendants, five CCA employees at DCF (defendants Wilkinson, Gentry, Williams, Adams, and Underwood), and Justin Jones, the former ODOC Director.

Mr. Pemberton then requested a court-appointed server, arguing the Marshals Service had failed in its duties. The court denied that request, explaining that it was Mr. Pemberton's responsibility to provide the Marshals Service with the proper address for each defendant.

Meanwhile, defendants Patton, Morton, and Knutson filed a motion to dismiss, and later the district court ordered Mr. Pemberton to show cause why the action should not be dismissed for failure to serve the other six defendants within Fed. R. Civ. P. 4(m)'s time limit. Mr. Pemberton responded to the motion and the show-cause order, and the district court dismissed the case.

The court determined there was no evidence that Mr. Pemberton provided the correct service information to the Marshals Service, so he had not shown good cause for the failure of service. Accordingly, the court dismissed the six unserved defendants from the action without prejudice.

The court also ruled that, to the extent Mr. Pemberton brought official-capacity claims against the ODOC defendants (Patton, Morton, Knutson, and, apparently, Jones, despite the lack of service on him), those claims were against the State and

therefore barred by Eleventh Amendment immunity.  The court further concluded

that the claims against defendant Morton were barred by the statute of limitations.[1]

Finally, the court determined that the allegations against the served

defendants—Patton, Morton, and Knutson—were vague, conclusory, and failed to

show that any of them personally participated in the alleged constitutional violations,

as required for liability under § 1983.  For that reason, the court considered the

claims against them frivolous, dismissed them from the action with prejudice, and

dismissed the entire action as frivolous under 28 U.S.C. § 1915(e)(2)(B).[2]

Mr. Pemberton filed a motion to alter or amend the judgment under

Fed. R. Civ. P. 59(e).  The district court denied that motion.  Mr. Pemberton appeals.

## II.  DISCUSSION

Mr. Pemberton's presentation of his appellate issues is both repetitive and

disjointed; parts of the same issue are repeated or scattered across different sections

of his opening brief.  We therefore will frame and address his arguments in a manner

we consider more conducive to analysis.  Because Mr. Pemberton proceeds pro se,

we construe his filings liberally but do not act as his advocate, and his pro se status

---

[1] Although the court's dismissal order is unclear as to whether the court meant to dismiss the claims against Ms. Morton on limitations grounds, the court clarified in its order denying Mr. Pemberton's post-judgment motion that it had intended to do so.

[2] The district court counted its dismissal as a strike against Mr. Pemberton pursuant to 28 U.S.C. § 1915(g).  Concerned that Mr. Pemberton may have accumulated three strikes and was therefore ineligible to proceed *ifp* on appeal absent a showing of imminent danger of serious physical injury, we ordered him to address the three-strikes issue.  He did so but eventually paid his filing fee in full.  Therefore, the three-strikes issue, which was referred to our panel, is moot.

does not excuse him from complying with fundamental procedural requirements in either the district court or this court. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## A. *Dismissal for failure to serve process*

We first consider whether the district court erred in dismissing the claims against the six unserved defendants for failure to timely serve process. Our review is for abuse of discretion. *Jones v. Frank*, 973 F.2d 872, 872 (10th Cir. 1992). Mr. Pemberton argues that because he was authorized to proceed *ifp*, the Marshals Service was required to find and serve all defendants, and his instructions that service was to be made in care of Oklahoma's governor, as the state's chief executive officer, were proper under Fed. R. Civ. P. 4(j)(2)(A).

We agree with the general principle that the Marshals Service was required to carry out service; indeed, Rule 4(c)(3) and 28 U.S.C. § 1915(d) say as much. And we have recognized "that good cause exists to excuse a plaintiff's failure to serve where the plaintiff is proceeding [*ifp*] and is therefore entitled to rely on service by the U.S. Marshal," at least where "there is no evidence in the record that [p]laintiff[] failed to cooperate with the U.S. Marshals or [was] otherwise not entitled to their service." *Olsen v. Mapes*, 333 F.3d 1199, 1204-05 (10th Cir. 2003). But the Marshals Service is not responsible for lack of service where a plaintiff does not provide correct information required for service. *See Johnson v. U.S. Postal Serv.*, 861 F.2d 1475, 1479-80 (10th Cir. 1988) (concluding the Marshal's Service was not culpable for failure to effect service in an *ifp* case where the plaintiff had named the wrong

defendant); *Oltremari ex rel. McDaniel v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1352 (D. Kan. 1994) (dismissal of *ifp* case for Marshals Service's failure to effect service is improper unless the service defect "result[s] from inadequate or inaccurate information presented by plaintiff or on a lack of diligence on the part of plaintiff"); *cf. Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) ("[T]he Marshal is not charged with finding a defendant who has moved without providing an accessible forwarding address.").

Here, in attempting to provide a proper service address, Mr. Pemberton relied on Rule 4(j)(2)(A). That reliance was mistaken. The rule provides: "A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by . . . delivering a copy of the summons and of the complaint to its chief executive officer." Fed. R. Civ. P. 4(j)(2)(A). By its terms, the rule applies only when a plaintiff sues a state governmental organization, but Mr. Pemberton sued only individuals. Accordingly, the rule is inapplicable. And contrary to Mr. Pemberton's contention, *Brown v. Fisher*, 251 F. App'x 527, 530 n.4 (10th Cir. 2007), did not hold that service on an ODOC employee is properly effectuated by serving a state's chief executive officer. That case instead merely reiterated the proper method of serving a state, municipal corporation, or other state-created governmental organization under Rule 4(j)(2).

Mr. Pemberton points out that he provided the Governor's telephone number on the service forms he completed and argues the Marshals Service should have used the number to inquire of each defendant's location. Mr. Pemberton also relies on a

Seventh Circuit decision, *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990), indicating that once a prisoner furnishes the Marshals Service with information sufficient to identify a former employee (such as defendant Jones in this case), the Marshals Service should be able to learn of the former employee's address and effect service.[3]

We reject these arguments given the views expressed in *Johnson*, *Oltremari*, and *Fields*, discussed above. Moreover, the *Sellers* court was concerned that due to safety concerns, an indigent prisoner might not be able to obtain a correctional employee's home address or, in the case of a former employee, his current business address. *Id.* Mr. Pemberton made no showing that he even inquired about obtaining such addresses let alone that such a request was rejected, nor did he request personal service on any defendants who then worked at DCF, a facility whose address he knew or should have known. He instead continued to rely (mistakenly, as it turns out) on Rule 4(j)(2)(A). We decline to fault the Marshals Service in these circumstances.

In sum, we cannot say the district court abused its discretion when it determined that Mr. Pemberton was responsible for providing the correct service address for the individual defendants, that he failed to do so, that he failed to show cause for failing to do so, and that the claims against the six unserved defendants should be dismissed without prejudice.

---

[3] Mr. Pemberton's reliance on *Byrd v. Stone*, 94 F.3d 217, 219-20 (6th Cir. 1996), is misplaced because there the plaintiff had provided an appropriate address for the defendant to be served but the court clerk never issued summonses and never appointed the Marshals Service to carry out service.

B. *Dismissal of official-capacity claims against ODOC defendants*

Mr. Pemberton takes issue with the district court's dismissal of his official-capacity claims for damages against ODOC defendants Patton, Morton, Knutson, and (apparently) Jones on the basis of Eleventh Amendment immunity. He argues the district court misread his complaint as seeking damages against these defendants in their official capacities whereas he sought damages against them in their individual capacities, and the Eleventh Amendment does not bar such claims.

This argument reflects a misunderstanding of the district court's ruling. The court did not dismiss any individual-capacity claims for damages against the ODOC defendants based on Eleventh Amendment immunity but ruled only that to the extent Mr. Pemberton brought any official-capacity damages claims against them (and he did state that his claims against Director Patton and Mr. Knutson were in both their official and individual capacities, *see* R. at 15-16), they were barred by Eleventh Amendment immunity. The error Mr. Pemberton identifies simply does not exist.

C. *Dismissal of individual-capacity claims against defendant Morton*

Mr. Pemberton's claims against Ms. Morton arise from her handling of a grievance appeal in September 2012, when she was manager of the Administrative Review Authority. He alleged that in July 2012, he gave documents he had prepared for litigation to a DCF library supervisor, Ms. Farris, for photocopying. Ms. Farris kept the documents for three days and made the requested copies outside Mr. Pemberton's presence, which he claims afforded prison officials an opportunity to read the documents and make copies for advance distribution to potential litigation

- 8 -

opponents. He filed a grievance that DCF's grievance coordinator (unserved defendant Rebecca Adams) rejected and returned to him unanswered, noting he was "on grievance restriction, proper documentation not included." R. at 102. Mr. Pemberton then appealed to Ms. Morton, who returned the appeal because he had repeatedly submitted "grievances incorrectly and not according to policy." *Id.* at 109. She also placed him on a grievance restriction extension.

Mr. Pemberton asserted that Ms. Morton violated his Fourth Amendment right to be free of illegal searches by acquiescing in or condoning the practice of making photocopies of litigation documents outside a prisoner's presence. He also asserted that by returning his grievance appeal unanswered and placing him on grievance restriction extension, Ms. Morton violated his First Amendment right to access the courts because those acts were designed to frustrate his ability to exhaust his administrative remedies and thereby facilitate failure-to-exhaust defenses in future legal actions. He further alleged Ms. Morton had retaliated against him for filing grievances.

We need not address Mr. Pemberton's argument that the district court misconstrued his allegations regarding Ms. Morton when the court determined she did not have the requisite personal participation. Instead, we affirm the dismissal of the claims against Ms. Morton on the ground that the statute of limitations had run. Our review of the limitations issue is de novo. *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010).

Oklahoma's two-year statute of limitations applies to § 1983 claims. *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). The complained-of conduct occurred in September 2012, and Mr. Pemberton does not argue that (nor do we see any reason why) his claim accrued any later. He did not file his action until November 2014, more than two years later. His claims against Ms. Morton are therefore time-barred unless the limitations period can be tolled.

As he did in the district court, Mr. Pemberton argues the limitations period should be tolled because the grievance process he initiated in July 2012 was not completed until March 2014, and the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), tolls the limitations period in such circumstances. The district court disagreed, and so do we.[4] Nothing in § 1997e(a) refers to tolling.[5] And in *Roberts v. Barreras*, we recognized that "in a § 1983 suit, state tolling rules, not federal ones, apply . . . [to] both . . . determining whether the filing of mandatory grievances requires tolling at all, and, if so, how that tolling is to be calculated." 484 F.3d 1236,

---

[4] We typically review the refusal to apply equitable tolling for abuse of discretion, *Braxton*, 614 F.3d at 1159, but here the tolling issue is a legal one, so our review remains de novo.

[5] Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Mr. Pemberton contends that in *Laubach v. Scibana*, 301 F. App'x 832 (10th Cir. 2008), we held that tolling applies to all claims while a prisoner seeks to exhaust administrative remedies. We reached no such holding but instead assumed that under Oklahoma law, tolling applied during exhaustion and concluded that the plaintiff's claims were still time-barred. *Id.* at 837.

1241 (10th Cir. 2007). We then examined New Mexico's statutory and equitable tolling provisions. *Id.* at 1241-44.

Here, we must look to Oklahoma law,[6] which allows equitable tolling (1) when a plaintiff is under a "legal disability" due to impaired competency or minority, (2) "when defendants engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights," and (3) in cases of "exceptional circumstances." *Young v. Davis*, 554 F.3d 1254, 1258 (10th Cir. 2009) (internal quotation marks omitted). Mr. Pemberton does not contend any of these three circumstances exists here; in fact, he concedes that "Oklahoma has no tolling for state limitations periods for prisoner exhaustion." Aplt. Opening Br. at 22. He instead relies—improperly, as we have explained—on § 1997e(a). Furthermore, nothing prevented Mr. Pemberton from filing suit and then contesting any exhaustion defense under the principle announced in *Little v. Jones*: "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." 607 F.3d 1245, 1250 (10th Cir. 2010).

D. ***Dismissal of individual-capacity claims against defendants Knutson and Patton***

Claims four and five of his complaint attempt to assert supervisory liability against defendants Knutson and Patton. To do so, Mr. Pemberton first asserted that two of the unserved CCA defendants (Chief of Unit Management Mr. Gentry, who

---

[6] For this reason, Mr. Pemberton misplaces reliance on cases concerning the tolling laws of other states.

- 11 -

supervised each DCF unit, including the law library, and Warden Wilkinson) failed to provide him with adequate time and materials to prepare litigation documents, in violation of Mr. Pemberton's right of access to the court. The deprivation of materials included legal-research books, white paper, envelopes, photocopies, black ink pens (which he claims are necessary for filings in the United States Supreme Court), and, for a period of approximately four months, pens of any color ink.

Mr. Pemberton further alleged that Mr. Knutson, who had succeeded Ms. Morton as manager of the Administrative Review Authority, violated his right of access to the courts by failing to correct the underlying deprivation after Mr. Pemberton brought it to his attention through a grievance appeal (Mr. Knutson returned the appeal because "the issues in the grievance [did] not match the referenced request to staff," R. at 144 (boldface and capitalization omitted)). He also asserted that by returning the grievance appeal unanswered, Mr. Knutson intended to frustrate his access to the courts by facilitating a failure-to-exhaust defense.[7] Mr. Pemberton finally alleged that Director Patton was liable for the deprivation of ink pens.

[7] In the third claim in his complaint, Mr. Pemberton appeared to assert that Mr. Knutson violated his court-access right in another way—by returning a different grievance appeal to Mr. Pemberton without resolution so as to thwart his completion of the grievance process. *See* R. at 48-51. But in his opening appellate brief, Mr. Pemberton's discussion of claim three is limited to the acts of unserved defendant Underwood and Ms. Morton. *See* Aplt. Opening Br. at 24. Accordingly, Mr. Pemberton has forfeited appellate review of the dismissal of claim three to the extent the claim was directed at Mr. Knutson. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). But even if he had not forfeited review, the claim as to Mr. Knutson would fail for the same reasons we are about to discuss.

The district court concluded that Mr. Pemberton failed to adequately allege personal participation by either Mr. Knutson or Director Patton and, as noted, dismissed the claims against them with prejudice. We review that determination de novo, accepting the well-pleaded factual allegations as true and construing them in the light most favorable to the plaintiff. *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014). In doing so, we "ask whether it is plausible that [Mr. Pemberton] is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). To that end, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

In § 1983 cases, a plaintiff must adequately allege each defendant's personal participation in a constitutional violation. *See id.* at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Mr. Pemberton sued Mr. Knutson and Director Patton

- 13 -

primarily[8] on the theory that each had supervisory authority over Mr. Gentry and Warden Wilkinson, but supervisory status alone is not enough to show personal participation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Rather, Mr. Pemberton "must show an 'affirmative link' between [these supervisory defendants] and the constitutional violation," which requires plausible allegations of "(1) personal involvement; (2) causation[;] and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Dodds*, 614 F.3d at 1195).

We will first discuss Mr. Pemberton's efforts to establish Director Patton's personal participation and then turn to his allegations concerning Mr. Knutson.

1. **Director Patton**

Mr. Pemberton alleged that Director Patton was affirmatively linked to the deprivation of black ink pens for a period of almost two years (and pens of any color ink for just over four months) by virtue of Oklahoma statutes defining his duties as ODOC Director and authorizing the use of private prison contractors.[9] Mr. Pemberton argues that this is sufficient under *Dodds* because, as the head of the ODOC, Director Patton knew, or should have known, that the deprivation was a policy or custom at DCF and he did nothing to stop it.

_____

[8] As we discuss below, Mr. Pemberton's allegation that Mr. Knutson's return of his grievance appeal unanswered does not involve supervisory liability.

[9] The specific statutes Mr. Pemberton cited are Okla. Stat. tit. 57, §§ 507, 508, 510, 561, 561.1, and 563.2. *See* R. at 71.

- 14 -

We disagree with Mr. Pemberton's reliance on *Dodds*. Where, as here, a plaintiff seeks to hold a supervisor accountable for a policy that causes the deprivation of a constitutional right, he must plausibly allege "more than 'a supervisor's mere knowledge of his subordinate's' conduct." *Schneider*, 717 F.3d at 767 (quoting *Iqbal*, 556 U.S. at 677). His allegations must plausibly show "the defendant promulgated, created, implemented or possessed responsibility for the continued operation of [the] policy." *Dodds*, 614 F.3d at 1199. The sheriff in *Dodds* was potentially liable because he "may have *played more than a passive role* in the alleged constitutional violation—he may have deliberately enforced or actively maintained the policies in question at the jail." *Id.* at 1204 (emphasis added).

Mr. Pemberton did not provide any factual allegations plausibly suggesting Director Patton was personally involved in promulgating, creating, or implementing any policies DCF staff may have used regarding failure to provide black-ink pens or pens of any color.[10] Nor did Mr. Pemberton plausibly allege that Director Patton was even aware of the alleged denial of pens such that he could be said to have deliberately enforced, actively maintained, or, for that matter, acquiesced in the policy. *See id.* at 1195 (stating that even before *Iqbal*, which imposes a more demanding standard for pleading a viable § 1983 claim, *see id.* at 1199, a plaintiff

_____

[10] Although an informal policy or custom can form the basis for a supervisor's liability, *see Dodds*, 614 F.3d at 1209 (Tymkovich, J., concurring) (explaining that a policy "need not be explicitly codified" to form the basis for municipal liability), we note that ODOC's current, formal policy is that each prison's law library will provide "appropriate writing utensils," ODOC Policy and Operations Manual, Access to Courts/Law Libraries, OP-030115, § IV.A.2. (effective Jan. 7, 2015).

- 15 -

could show a supervisor's "personal involvement . . . by demonstrating his . . . *knowledge of the violation* and acquiescence in its continuance" (emphasis added) (brackets and internal quotation marks omitted)).

Furthermore, Mr. Pemberton's allegations do not plausibly establish the required "causal connection" by showing Director Patton "set in motion a series of events that [he] knew or reasonably should have known would cause others to deprive" Mr. Pemberton of access to certain pens. *Id.* at 1195-96 (internal quotation marks omitted). At most, Mr. Pemberton's allegations show that, unlike the sheriff in *Dodds*, Director Patton played no more than a passive role despite being similarly charged under state law with supervisory responsibility over the entire ODOC. Mr. Pemberton's "bare assertions" that Oklahoma law rendered Director Patton "responsible for" policies prohibiting either black ink pens or any pens at all "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim." *Iqbal*, 556 U.S. at 681 (internal quotation marks omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

2. **Mr. Knutson**

Mr. Pemberton alleged that Mr. Knutson was affirmatively linked to the underlying deprivation of time and materials by his review of Mr. Pemberton's grievance appeal. We have said the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not

- 16 -

establish personal participation under § 1983." *Gallagher*, 587 F.3d at 1069. Mr. Pemberton attempts to distinguish Mr. Knutson's conduct from this rule, pointing out that Mr. Knutson did not deny his grievance but instead returned it to him unanswered. This distinction is insufficient because there remains no affirmative link between the underlying conduct and Mr. Knutson.

Mr. Knutson personally participated in returning the grievance appeal unanswered. But we cannot agree this states a claim that Mr. Knutson violated Mr. Pemberton's right of access to the courts. Even if we credit Mr. Pemberton's theory that returning his grievance appeal without a substantive answer was designed to facilitate a failure-to-exhaust defense, lack of exhaustion has not prevented his claims from proceeding in this case. Although Mr. Knutson argued to the district court that the claims against him could be dismissed for failure to exhaust, the district court did not base dismissal on that ground, and Mr. Knutson has made no exhaustion argument on appeal. Accordingly, the failure to answer his grievance has caused him no injury. Moreover, if necessary, Mr. Pemberton could have sought to be excused from exhausting by showing that Mr. Knutson prevented, thwarted, or hindered his efforts to exhaust, which, if proven, renders exhaustion "unavailable." *Little*, 607 F.3d at 1250 (internal quotation marks omitted).

Mr. Pemberton also alleged (and argues on appeal) that the affirmative link can be found in Mr. Knutson's failure to remedy the lack of time and materials to prepare court filings, which he likens to the sort of failure to act and condonation we said was sufficient to show personal participation in *Dodds*. We again disagree with

his reliance on *Dodds*. In *Dodds*, we concluded that the sheriff could be held liable under § 1983 for deliberately enforcing or actively maintaining an unconstitutional bail policy over which he had responsibility under Oklahoma law. *See Dodds*, 614 F.3d at 1203-04. Here, Mr. Pemberton has not alleged that Mr. Knutson, whose job was to review grievance appeals, had a similar responsibility over any policy or informal custom to deprive prisoners of adequate time and materials to prepare court filings.

### E. *Dismissal with prejudice*

Mr. Pemberton complains that the district court erred in dismissing with prejudice his claims against defendants Patton, Morton, and Knutson without considering the factors outlined in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992). But the *Ehrenhaus* factors come into play when a district court contemplates dismissing an action with prejudice as a sanction. *See id.* at 920-21 (outlining factors to consider "[b]efore choosing dismissal as a just sanction" for discovery violation); *see also, e.g.*, *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162-64 (10th Cir. 2007) (faulting district court for failing to consider *Ehrenhaus* factors before dismissing with prejudice under Fed. R. Civ. P. 41(b) for failing to comply with Fed. R. Civ. P. 8). The district court dismissed the claims against Patton, Morton, and Knutson with prejudice because the claims were legally insufficient and, in the case of Morton, also because the statute of limitations had run. The district court was not required to consider the *Ehrenhaus* factors before doing so.

Mr. Pemberton observes that "ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice," *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010), and a Rule 12(b)(6) dismissal is not appropriate unless "it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend," *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (internal quotation marks omitted). The district court addressed this in its order denying Mr. Pemberton's Rule 59(e) motion, observing that Mr. Pemberton had an opportunity to move to amend his complaint after the served defendants filed their motion to dismiss, and "the court was not required to invite" him to do so. R. at 444. We see no error in the dismissal with prejudice of the claims against defendants Patton, Morton, and Knutson.

### F. *Motion to strike insufficient affirmative defenses*

Mr. Pemberton filed a motion to strike the served defendants' affirmative defenses as insufficient. The district court did not mention that motion in its dismissal order but did consider it when Mr. Pemberton brought it up in his Rule 59(e) motion. The court observed that Mr. Pemberton sought to strike a multitude of statements in the motion to dismiss that contradicted the factual allegations of his complaint. The court concluded the motion had no merit, reasoning that "defendants' contradiction of plaintiff's complaint . . . is part of the litigation process, and plaintiff presented his arguments in his response to the motion to dismiss." R. at 448. We see no basis for reversing the district court's decision as we have independently reviewed and considered Mr. Pemberton's allegations.

- 19 -

## III. **CONCLUSION**

The judgment of the district court is affirmed.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge