**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 23-1566

————————

ROCKY L. FREEMAN,

Appellant

v.

UNIT MANAGER J. LINCALIS; PROBATION
OFFICER JOHN D. MCCARTHY;
SUPERVISING U.S. PROBATION OFFICER
STEPHEN L. BRIGHTON;
CHIEF PROBATION OFFICER JAMES M. FOX;
UNITED STATES OF AMERICA

————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:16-cv-02422)
District Judge: Honorable Christopher C. Conner

————————

Argued on March 4, 2025

Before: MATEY, FREEMAN and ROTH, Circuit Judges

(Opinion filed: October 29, 2025)

Sanketh Bhaskar
Henry Drembus
Brianna Jordan
Madeline Meth              **(Argued)**
Boston University
School of Law Appellate Clinic
765 Commonwealth Avenue
Suite 1304
Boston, MA 02215

Counsel for Appellant

Patrick J. Bannon              **(Argued)**
Office of United States Attorney
235 N Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

Carlo D. Marchioli
Office of United States Attorney
Middle District of Pennsylvania
Sylvia H. Rambo United States Courthouse
1501 N 6th Street, 2nd Floor
P.O. Box 202
Harrisburg, PA 17102

Counsel for Appellees

_____

OPINION OF THE COURT

_____

ROTH, Circuit Judge

Rocky Freeman was tried for two murders but was acquitted of one. His presentence report mistakenly stated that he had committed both murders. A judge ordered that the mistake be corrected. It was not. Eighteen years later, Freeman learned of this error. He sued, alleging that he had been subjected to heightened prison security conditions because of the error. He contends that the government is liable under the Federal Tort Claims Act (FTCA) for negligent transmission of his PSR and failure to correct it and that the federal officials responsible are individually liable under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*[1] for a denial of due process. Freeman now appeals an order dismissing those claims. We agree with him that the dismissal of his FTCA claim was improper. We will, however, affirm the dismissal of his *Bivens* claim (albeit on an alternative ground).

**I.**[2]

Rocky Freeman was part of a large Brooklyn drug ring run by Roberto Mateo-Feliz. In June of 1993, Mateo-Feliz hired Freeman to kill Freddie Gonzalez, a dealer who owed Mateo-Feliz money. At 11:30 p.m. on June 23, 1993, Freeman drove to Gonzalez's building and was told he was not home. He returned four hours later and convinced Gonzalez to come outside. Following a short conversation, Freeman shot

---

[1] 403 U.S. 388 (1971).
[2] Because of the procedural posture with which this appeal finds us, we recite the facts in the light most favorable to Freeman unless otherwise noted.

3

Gonzalez repeatedly and then drove him to the hospital where he ultimately died.

Freeman was arrested in late 1996.[3] He was charged in the United States District Court for the Eastern District of New York with drug conspiracy, plus two counts for the Gonzalez murder and two counts for the unrelated murder of Augustin Sosa, a Mateo-Feliz rival.[4] At trial, he was convicted of the drug and Gonzalez murder counts. He was acquitted of the Sosa murder counts.[5]

Freeman's presentence report (PSR) wrongly asserted that the jury hung on the Sosa charges and that Freeman murdered Sosa. It also stated that Freeman "was known by co-conspirators, drug customers, and several residents of the New Lots neighborhood as a dangerous individual who had committed murder**s**" (in plural).[6] On October 16, 1998, Freeman objected to these errors.[7] The U.S. Probation Office (USPO) responded five days later, acknowledging that it had erred in attributing the Sosa murder to Freeman and noting that

---

[3] At the time of his arrest, Freeman was incarcerated on a state robbery charge.

[4] For each murder, Freeman was charged with (1) murder in the furtherance of a drug conspiracy, in violation of 21 U.S.C. § 848(e)(1)(A), and (2) use of a firearm while carrying out murder, in violation of 18 U.S.C. § 924(c)(1).

[5] Freeman was found not guilty of Sosa's murder, making it unnecessary to reach the § 924(c)(1) firearm charge stemming from that murder.

[6] Appx. 155 ¶ 70 (emphasis added).

[7] Freeman's objections also noted several other minor inaccuracies.

4

the corresponding paragraphs of the PSR "are hereby stricken."[8]

Freeman was sentenced on October 23, 1998, to two consecutive life terms followed by five years.[9] At sentencing, Freeman's counsel raised his objections to the PSR. It is not clear from the record how the District Court ruled,[10] but Freeman has provided sworn (and unchallenged) testimony that the objections were sustained, the offending passages were ordered removed, and a corresponding addendum was ordered attached to the PSR. None of that happened. Instead, the USPO provided the Bureau of Prisons (BOP) with just the initial, inaccurate PSR. The only indication anything might have been wrong was an apparently overlooked notation referring to an addendum that had not been attached. The information in the inaccurate PSR was input by the BOP into its inmate management system (SENTRY).

During his time in custody, Freeman was subject to high security restrictions, some of which confused him. He was initially assigned to USP Florence, allegedly the "worst and most dangerous Penitentray [sic] at that time," located over

---

[8] Appx. 204–05.

[9] Freeman was later granted compassionate release on October 5, 2023, and was released during December of 2024.

[10] The sentencing judge reviewed the objections, and the government did not challenge them, but the available record does not appear to contain an explicit ruling.

1,500 miles from his family.[11]  There, he was deprived of "all contact visiting with family and friends,"[12] and attacked by a fellow inmate with a razor (causing permanent facial scarring). Freeman was later transferred to USP Big-Sandy, where he was held in solitary confinement for a year due to unidentified "unique circumstances surrounding" his case.[13]  Then, in January 2015 he was transferred to FCI Allenwood, where he made two trips to an outside medical facility.  On the Escorted Trip Authorization (ETA) forms approving those trips, Freeman's unit manager noted, "Life Term Use Caution! Contract killer killed two victims."[14]  During those transfers, Freeman was bound and shackled for hours, and was denied facilities access, forcing him to defecate and urinate on himself.

On December 5, 2015, Freeman, while reviewing his prison records, discovered the inaccurate ETAs, and realized the BOP had the wrong PSR.  He informed a BOP staff member on December 10 and was told to file an informal complaint.  Freeman did so, and was told that the ETAs had been removed from his file.  Freeman then pursued administrative remedies to remove the inaccurate PSR from his file.  He filed for injunctive relief in the District Court for the Eastern District of New York, leading to a March 30, 2016,

---

[11] Appx. 96 ¶ 19.  Freeman argues that this conflicted with the BOP's policy of "normally" placing inmates "within 500 miles of the inmate's release residence."  U.S. Dept. of Justice, Change Notice chapter 3, page 3 (Sept. 3, 1999).

[12] Appx. 96 ¶ 19.

[13] Appx. 96–97, 445.

[14] Appx. 129 (January 21, 2015 ETA); Appx. 127 (April 8, 2015 ETA).

6

order directing the government to "hand-deliver the addendum" to his PSR to the BOP by 5:00 p.m. the next day.[15] However, as late as January 27, 2017, Freeman's SENTRY file still listed him as a double-murderer.

## II.

On April 1, 2016, Freeman filled out an SF-95 alleging that the submission of and failure to correct his inaccurate PSR amounted to an FTCA violation.[16] Following the instructions of BOP staff, he mailed the SF-95 to USPO's Brooklyn Heights office. After receiving no response, Freeman proceeded on December 7, 2016, to file a civil complaint in the United States District Court for the Middle District of Pennsylvania,[17] against the BOP, the USPO, his unit manager, and the three probation officers involved in preparing and submitting his PSR. He alleged violations of the FTCA and Privacy Act. Because Freeman was granted leave to proceed in forma pauperis (IFP), U.S. Marshals served process on the BOP, the USPO, and the unit manager, but they were unable to serve the probation officers because the addresses Freeman had provided were no longer accurate.

Freeman moved for court-appointed counsel on April 4, 2017, and then again on September 14, 2017. Both motions were denied. On January 30, 2018, he received permission to file his First Amended Complaint, which dropped his Privacy

---

[15] *United States v. Mateo-Feliz*, Dkt. 1:96-cr-00527-PKC-8 (E.D.N.Y. Mar. 30, 2016), ECF No. 81.

[16] The SF-95 is a standard form for presenting FTCA claims.

[17] Freeman was imprisoned in Pennsylvania at the time.

7

Act claim and added a *Bivens* claim.[18]  The properly served defendants then moved for dismissal and/or summary judgment.  On July 17, 2018, while that motion was pending, the District Court ordered Freeman to show cause why his complaint against the probation officers should not be dismissed for failure to serve process.  Freeman noted that he was incarcerated, and again asked for counsel to assist him with service.[19]

On September 19, 2018, the District Court granted the dispositive motions.  It found that the BOP had not acted negligently, that Freeman had failed to plead a constitutional violation, and that he had failed to serve process on the probation officers.  On appeal, we instructed the parties to brief whether the District Court had erred by (1) focusing on the BOP's (as opposed to the USPO's) conduct, and (2) failing to assist Freeman in locating the probation officers.[20]  In lieu of briefing those points, the government acknowledged the court had erred and moved for a voluntary remand.[21]  We granted the motion.

On January 28, 2022, following our remand, Freeman

---

[18] The amended complaint was filed in response to the government's June 2, 2017 motion to dismiss, which challenged Freeman's Privacy Act claims.

[19] Freeman had previously sent unsuccessful requests for pro bono assistance to four attorneys.

[20] Freeman did not appeal the dismissal of his *Bivens* claim against the unit manager.

[21] The government explicitly acknowledged error only regarding the non-analysis of the USPO's conduct, but requested remand on all claims.

8

made his third request for counsel. On March 10, (without responding to that motion), the District Court issued a scheduling order giving the parties sixty days to complete discovery. Freeman received that order on March 15, and filed a fourth motion for counsel the next day—arguing that as "a pro se plaintiff prisoner and lay-man of law, [he did] not have any idea on how to conduct a disposition [sic] or discovery."[22] On March 23, 2022, Freeman asked the District Court to stay discovery until it ruled on the pending motions.

On April 22, the District Court denied Freeman's motions.[23] The day he received the order, Freeman sent a series of requests for production (RFPs) seeking, *inter alia*, the probation officers' addresses and information concerning BOP's rationale for his conditions of confinement. The government replied that Freeman had served his request too close to the deadline and that it would therefore not be producing anything.[24]

On May 23, Freeman moved to reopen and compel discovery. While conceding his RFPs were untimely, he noted that he (1) was trying to litigate pro se during a prison lockdown, (2) was experiencing medical difficulties, and (3) had moved immediately for counsel after receiving the discovery schedule, promptly requested a stay, and served his RFPs the day after he learned those requests were denied.

The parties then filed cross-motions for summary judgment. The government moved to stay discovery pending

---

[22] Appx. 234–35.
[23] Freeman unsuccessfully moved for reconsideration.
[24] *See* Fed. R. Civ. P. 34(b)(2)(A).

9

the resolution of the motions. On June 29, the District Court denied Freeman's motion to compel without prejudice, and granted the government's motion to stay, but noted that this should not "be construed as precluding additional time for discovery if [it] den[ied] defendants' [summary judgment] motion."[25]

On January 5, 2023, the District Court ordered the government to provide any information it could reasonably locate concerning the probation officers' whereabouts. The government responded with a short affidavit saying they had retired and their records had been sent to the National Personnel Records Center (NPRC) in St. Louis, Missouri. On February 16, ten days after receiving that affidavit, Freeman asked the court to (1) require the government to investigate further, (2) appoint pro bono counsel to help him investigate, or (3) ask U.S. Marshals Service (USMS) to retrieve the records from the NPRC. On February 22, the District Court asked the Federal Bar Association's pro bono committee for a volunteer to help Freeman, but told Freeman that, if no volunteer was located within a week, he would need to perfect service himself. The committee informed the court when it did not find a volunteer.

On March 17, the District Court ruled on the dispositive motions. It dismissed Freeman's FTCA claim under Federal Rule of Civil Procedure 12(b)(1) because Freeman sent his SF-95 to the wrong address. Alternatively, the court also found that his claim failed on the merits, and granted summary judgment to the government under Rule 56(a). It dismissed his *Bivens* claim under Rule 4(m) for failure to serve the probation

---

[25] Add. 6.

officers. On June 26, 2023, the court denied Freeman's motion for reconsideration.[26] Freeman appealed.[27]

**III.**

The District Court had jurisdiction over Freeman's *Bivens* claims under 28 U.S.C. § 1331. It had putative jurisdiction over his FTCA claim under 28 U.S.C. § 1346(b). We have jurisdiction to review its decisions regarding both claims under 28 U.S.C. § 1291.

We review de novo the District Court's orders dismissing Freeman's claims under Rules 12(b)(1)[28] and

---

[26] Freeman argued the District Court had never provided him with a final deadline, asserted that he had never received the committee's letter saying no counsel had been located, and said his son had begun working with a process server.

[27] Freeman is represented, at our request, by the Boston University School of Law Appellate Clinic. We thank them for their excellent representation. Lawyers (and law students) who agree to act pro bono represent the legal community at its finest.

[28] *Erie Ins. Exch. by Stephenson v. Erie Indem. Co.*, 68 F.4th 815, 818–19 (3d Cir. 2023). The burden of demonstrating subject matter jurisdiction rests with the party asserting it. *See Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009); *but see S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 n.2 (3d Cir. 2012) (recognizing a limited exception to this burden-allocation for requirements which, although "jurisdictional on [their] face," operate as *de facto* affirmative defenses).

11

56(a),[29] applying the same standards as the District Court. We review for abuse of discretion the District Court's orders concerning court-appointed counsel, service of process, discovery, and reconsideration.[30] Because Freeman proceeded before the District Court pro se, we construe his filings before that court "liberally" and hold him to "less stringent standards than formal pleadings drafted by lawyers."[31] But pro se parties must still ultimately "abide by the same rules that apply to all other litigants."[32] We may affirm on any ground supported by the record.[33]

## IV.

Under the FTCA, the United States is liable for most

---

[29] *Qin v. Vertex, Inc.*, 100 F.4th 458, 469 (3d Cir. 2024). Summary judgment under Rule 56(a) is appropriate where "construed in the light most favorable to the non-moving party, the record shows that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

[30] *See Powell v. Symons*, 680 F.3d 301, 306, 310 n.8 (3d Cir. 2012); *Crosbie v. Highmark Inc.*, 47 F.4th 140, 146 (3d Cir. 2022); *McDowell v. Phila. Hous. Auth.*, 423 F.3d 233, 238 (3d Cir. 2005).

[31] *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

[32] *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

[33] *See Hughes v. Long*, 242 F.3d 121, 122 n.1 (3d Cir. 2001).

torts to the same extent as any other litigant.[34]  Here, Freeman alleges the government acted negligently in its transmission of, and failure to correct, his PSR.  In dismissing his claim, the District Court held that Freeman (1) failed to present this claim to the appropriate agency, (2) did not satisfy the Prison Litigation Reform Act (PLRA), and (3) lacked an actionable claim on the merits.

**A.**

28 U.S.C. § 1346(b)(1) provides that "*[s]ubject to the provisions of chapter 171 of this title*, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States" under the FTCA.[35]  One such provision is 28 U.S.C. § 2675(a), which states that an "action shall not be instituted" under the FTCA "unless the claimant shall have first presented the claim to the appropriate Federal agency."[36]

Here, the government argues that Freeman failed to satisfy § 2675(a) because (at the BOP's instruction) he presented his SF-95 to the Brooklyn Heights Office of the USPO, rather than to general counsel of the USPO's organizational parent.  But nothing in the FTCA "indicates that notice of a tort claim must be presented to any particular

---

[34] 28 U.S.C. § 1346(b)(1).  Although Freeman's complaint alleges that the USPO and the BOP are individually liable, the District Court correctly held that the only proper FTCA defendant is the United States as a whole. *See id.*

[35] Emphasis added.

[36] By regulation, the "appropriate Federal agency" is "the Federal agency whose activities gave rise to the claim" being asserted.  28 C.F.R. § 14.2(b)(1).

recipient at the federal agency."[37] Nor is there any basis, under § 2675(a)'s "minimal notice" requirement, for requiring claimants to thoroughly familiarize themselves with the organizational intricacies of their tortfeasor.[38] Here, the government acknowledges that the Brooklyn Heights USPO office was a component of the appropriate agency (and, in fact, that it was obligated to forward all administrative complaints it received to the organizational parent's general counsel). Indeed, things could hardly be otherwise, as it was the USPO's employees "whose activities gave rise to the claim" that Freeman was asserting.[39] As such, by presenting the USPO with his SF-95, Freeman *did* present his claim to the appropriate agency.

The government did not contest at any point in its multiple rounds of briefing that Freeman's SF-95 was received by the Brooklyn Heights Office. At oral argument, however, it suggested that that office may not have received his claim either. While we have held that a plaintiff must generally provide affirmative evidence of receipt, we have heretofore done so only where the government brought a factual jurisdictional challenge, proffering at least *some* affirmative evidence of non-receipt.[40] We therefore decline the

---

[37] *See Ortiz-Rivera v. United States*, 891 F.3d 20, 27 (1st Cir. 2018).

[38] *See Tucker v. U.S. Postal Service*, 676 F.2d 954, 958 (3d Cir. 1982).

[39] *See* 28 C.F.R. § 14.2(b)(1).

[40] *See Lightfoot*, 564 F.3d at 626, 628; *accord. Drazan v. United States*, 762 F.2d 56, 58 (7th Cir. 1985); *Bailey v. United States*, 642 F.2d 344, 346 (9th Cir. 1981); *Moya v. United States*, 35 F.3d 501, 503–04 (10th Cir. 1994).

14

government's invitation to disclaim jurisdiction at this juncture based on this belated, unevidenced, and unexamined argument (to which Freeman has had no opportunity to respond or seek discovery).[41]

In short, the District Court erred in dismissing

---

[41] We note that, apart from the above analysis, the government's arguments would not justify dismissal given its concession at oral argument that Freeman did properly present his claim insofar as it related to the BOP. FTCA suits are brought against the *United States*, not individual agencies, and § 2675 does not require injured parties to present their claim to every potentially liable agency. *See* 18 C.F.R. § 14.2(b)(2). Instead, where multiple agencies are implicated, a party may exhaust his claim by presenting it to any of them. *See id.* (noting that, where this is so, the recipient agency "shall contact all other affected agencies" to coordinate a response).

Freeman's complaint for lack of jurisdiction.[42]

**B.**

The PLRA provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]"[43] To satisfy this requirement, a prisoner must show a "less-than-significant-but-more-than-*de minimis* physical injury."[44] While mere deprivations like the "[l]oss of food, water, and sleep are not themselves physical injuries," the consequences of such deprivations can be.[45]

---

[42] Because we find dismissal was in any event unwarranted, we need not address Freeman's argument that the government has forfeited its exhaustion argument due to its delay of six years in raising it. Nor do we need to address Freman's related argument that our precedents holding § 2675 to be jurisdictional, *see e.g.*, *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457–58 (3d Cir. 2010), have been abrogated by more recent Supreme Court decisions. *Compare, e.g.*, *ECC Int'l Constructors, LLC v. Sec'y of Army*, 79 F.4th 1364, 1376–77 (Fed. Cir. 2023) (determining that § 2675(b) "fits comfortably within the class of mandatory, nonjurisdictional claim-processing rules," and noting that *White-Squire* "predate[s] the Supreme Court's most recent efforts to rein in use of the jurisdictional label"), *with Van Emburgh ex rel. Est. of Van Emburgh v. United States*, 95 F.4th 795, 801 n.3 (4th Cir. 2024) (determining that that § 2675 remains jurisdictional notwithstanding recent Supreme Court precedent).
[43] 42 U.S.C. § 1997e(e).
[44] *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003).
[45] *Id*. at 534.

The District Court held that this recovery-bar required Freeman to describe his physical injuries in his pre-suit administrative complaint.[46] It further found that he failed to do so because his SF-95 contained only a generic reference to "actual damage's [sic] of pain, suffering, and additional punishment."[47] It concluded that, even if Freeman *had* properly submitted his SF-95, he still would not have satisfied the FTCA's exhaustion requirement.[48]

Freeman argues that the District Court improperly grafted the PLRA's physical injury standard onto the FTCA's presentment requirement. We agree. To exhaust a claim under the FTCA, a plaintiff need only provide "minimal notice" which is "sufficient to *enable the agency to investigate*" their claim.[49] This is not a high bar. An administrative complaint may be adequately presented even where it does not specify the

---

[46] Add. 24 (noting that "the inclusion of any physical injuries [Freeman] sustained would place the agency on notice and would be relevant for purposes of potential settlement").

[47] Appx. 458.

[48] The government argues that Freeman failed to challenge this holding in his opening brief, and has therefore forfeited any argument to the contrary. That is incorrect. Freeman *did* challenge this holding in his opening brief, albeit in a different section from his broader discussion of FTCA presentment.

[49] *Tucker*, 676 F.2d at 958–59 (emphasis added); *see also Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999) (noting that § 2675(a) was enacted "not to place procedural hurdles before potential litigants, but to facilitate early disposition of claims").

17

correct (or any) cause of action,[50] lacks sufficient facts to prevail at trial,[51] or fails to provide the government with enough information to settle.[52] The PLRA's physical injury requirement, meanwhile, is a "[l]imitation on recovery" which speaks only of what a plaintiff must ultimately prove to prevail at trial.[53] There is no basis in either statute for forcing plaintiffs

---

[50] *See Goodman v. United States*, 298 F.3d 1048, 1055 (9th Cir. 2002) (holding that "the notice requirement under section 2675 is minimal, and a plaintiff's administrative claims are sufficient even if a separate basis of liability arising out of the same incident is pled in federal court"); *Burchfield*, 168 F.3d at 1255 (holding that an "administrative agency is deemed to be on notice not only of the theories of recovery stated in the claim, but of the theories of recovery that its reasonable investigation of the specific allegations of the claim should reveal").

[51] *See Burchfield*, 168 F.3d at 1255 ("We do not require the claimant to provide the agency with a preview of his or her lawsuit by reciting . . . every factual detail that might be relevant[.]").

[52] *See Tucker*, 676 F.2d at 959 (holding that a claimant can satisfy § 2675 through an administrative complaint which does not meet 28 U.S.C. § 2672's requirements for enabling settlement).

[53] 42 U.S.C. § 1997e(e); *see Mitchell*, 318 F.3d at 534–36 (analyzing Section 1997e(e)'s requirement as an element of proof determining the sufficiency of a prisoner's complaint); *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000) ("Under § 1997e(e), . . . to bring a claim for mental or emotional injury suffered while in custody, a prisoner must allege physical injury[.]")*; cf. Hoever v. Marks*, 993 F.3d 1353, 1360 (11th Cir. 2021) (en banc) ("The physical injury requirement is not a bar to filing suit, only a limitation on recovery.")

18

to notify the government of the precise nature of their injuries (or, for that matter, whether they have suffered a physical injury at all) in the pre-suit exhaustion phase.

That does not mean, however, that the two requirements are unrelated. "[A] plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts."[54] If a plaintiff's physical injuries are so disconnected from the allegations laid out in their administrative complaint that they become a wholly new claim, the plaintiff will have no way of collecting on them at trial. That, in turn, will make it impossible to recover compensatory damages for psychological or emotional injuries and, where no other relief is sought, may justify dismissing the complaint entirely.[55]

In his administrative complaint, Freeman provided the minimal notice necessary to present his negligence claim.[56] Then, in his civil action, he alleged a physical injury resulting from the government's negligence—i.e., the facial injury he sustained from a fellow high-security inmate.[57] On this record, it was error to dismiss his claim for failure to satisfy the

---

[54] *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003).

[55] *See Mitchell*, 318 F.3d at 533 (holding that complaint failed to state a claim for physical injury under § 1997e(e)).

[56] *See Tucker*, 676 F.2d at 958–59.

[57] As discussed below, Freeman has adequately alleged at this pre-discovery stage in the proceeding that his facial injuries were foreseeably and proximately linked to the inaccuracies in his PSR.

PLRA.[58]

## C.

The United States' liability for an FTCA claim is based on "the law of the place where the act or omission occurred."[59] Although the USPO's alleged negligence occurred in New York, while the BOP's occurred in Colorado, Kentucky, and Pennsylvania, no party has alleged a relevant conflict-of-law. Instead, both parties acknowledge that all four states use the same, familiar, four-part test for negligence: duty, breach, causation, and injury. Applying this test, the District Court found that Freeman had failed to present evidence which could sustain a negligence suit. In the absence of adequate discovery, we hold that this dismissal was premature.

The government has not contested that the USPO breached a duty when it transmitted a PSR falsely attributing the Sosa murder to Freeman. And the government does not contest that, if Freeman's conditions of confinement were

---

[58] Moreover, our precedent is clear that plaintiffs who have been released from incarceration may prospectively exempt themselves from the PLRA's strictures, including the PLRA's physical-injury requirement, by filing an amended or supplementary post-release complaint (even one that simply recapitulates their original complaint). *See Garrett v. Wexford Health*, 938 F.3d 69, 84, 91 (3d Cir. 2019); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 307–09 (3d Cir. 2020). Upon remand, the District Court may determine the impact of any timely requested amendment on Freeman's claim.

[59] 28 U.S.C. § 1346(b)(1); *see also Molzof v. United States*, 502 U.S. 301, 305 (1992).

heightened as a result of the misstatement in the PSR, this would constitute an injury. Instead, its sole argument is that he cannot show causation because he "has not established what security classification he received, what classification he should have received, or how classifications impact housing designations, solitary confinement decisions, or restraint policies."[60]

Freeman argues that he *has* shown evidence of a causal link between his false PSR and his damages. We need not decide that. Even if we grant that Freeman does not currently have enough evidence of causation to go to trial, that is largely because the government refused to respond to his discovery requests seeking evidence about his conditions of confinement. While the District Court denied Freeman's motion to compel discovery, it did so solely because the resolution of Freeman's dispositive motions might render discovery unnecessary, not

---

[60] At points in its briefing, the government appears to intimate that the USPO's conduct was shielded by quasi-judicial immunity. That defense is inapposite. It is well-settled that probation officers are entitled to quasi-judicial immunity when acting as arms of the court. *See Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986). It follows that the USPO *would* be entitled to quasi-judicial immunity for any errors that occurred in researching and drafting Freeman's original PSR. *See Dorman v. Higgins*, 821 F.2d 133, 138 (2d Cir. 1987). But Freeman's suit is predicated on the USPO's failure to abide by a court order directing it to amend the PSR, and its subsequent transmission of an incomplete PSR to the BOP. There is no reason the USPO should be immunized for its (alleged) failure to abide by a direct court order, or its ministerial transmission of the wrong report to the BOP.

21

because Freeman had failed to show good cause. On remand, that discovery would be appropriate.[61]

We will therefore reverse the order dismissing the FTCA claim and remand it to the District Court for further proceedings.

## V.

Turning to Freeman's *Bivens* claims against the probation officers, we hold that the District Court erred in dismissing them for failure to effectuate process. But that error was harmless because Freeman's claims fail on the merits. As such, we will affirm the District Court's judgment despite the error.

---

[61] The parties further dispute whether Freeman has provided adequate evidence of negligence by the BOP to survive summary judgment as to that aspect of his claim. Here too, and particularly given the considerable overlap with Freeman's allegations against the USPO, we believe the parties' factual disputes are better resolved after adequate discovery has taken place. Remand will also permit the District Court to determine in the first instance the relevance, if any, of the FTCA's discretionary function exception to Freeman's BOP-centered theory of recovery. *See* 28 U.S.C. § 2680(a); *Rinaldi v. United States*, 904 F.3d 257, 273–74 (3d Cir. 2023); *see also S.R.P.*, 676 F.3d at 333 n.2 (concluding that, although the discretionary function exception is jurisdictional, the burden of proving its applicability rests with the government).

22

**A.**

Under Federal Rule of Civil Procedure 4(m), if "a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Nevertheless, where a "plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."[62] Under 28 U.S.C. § 1915(d), USMS is required to serve process for any plaintiff proceeding IFP.[63] Where it fails to do so, even after a plaintiff furnishes identifying information, the plaintiff has shown per se good cause under Rule 4, and the court may not dismiss.[64]

We have never precedentially addressed how much diligence § 1915(d) requires from USMS in locating a defendant. Moreover, it is clear that § 1915(d) does not wholly absolve plaintiffs of their duty to locate the individuals they

---

[62] Fed. R. Civ. P. 4(m); *see also Davis v. Samuels*, 962 F.3d 105, 116 (3d Cir. 2020).

[63] 28 U.S.C. 1915(d); *see generally Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000).

[64] *See Welch v. Folsom*, 925 F.2d 666, 669–70 (3d Cir. 1991); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1426 (7th Cir. 1996) ("The Marshals Service's failure to complete service, once furnished with the necessary identifying information, is automatically 'good cause' requiring an extension of time under Rule 4(m).").

want served.[65] But we *have* emphasized that IFP plaintiffs "should not be penalized for failure to effect service where it failed through no fault of [their] own."[66] And our sister-circuits have overwhelmingly held that, where an IFP plaintiff can adequately identify a defendant but not locate them, § 1915(d) requires USMS to take reasonable steps to assist.[67]

This is particularly true where a litigant is suing a current or former government employee who played some role in his or her incarceration.[68] On the one hand, such employees would like to conceal their home addresses from prisoners (or former prisoners), and will often be difficult for IFP plaintiffs to locate.[69] On the other hand, those addresses will usually be readily accessible to USMS.[70] In recognition of these twin realities, our sister-circuits have generally held that, as long as

---

[65] *See Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993) ("While in forma pauperis plaintiffs should not be penalized for a marshal's failure to obtain proper service, it [is the plaintiff's] responsibility to provide proper addresses for service[.]").

[66] *Quinlan*, 960 F.2d at 359.

[67] *See, e.g.*, *Sellers v. United States*, 902 F.2d 598, 601–03 (7th Cir. 1990); *Richardson v. Johnson*, 598 F.3d 734, 738–40 (11th Cir. 2010).

[68] *See Sellers*, 902 F.2d at 602.

[69] *See id*.

[70] *See Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (noting that, while a "prison may be justifiably reluctant to provide employee addresses to a prisoner or ex-prisoner due to security concerns, it hardly can claim the same reluctance in providing the information to a federal law enforcement agency").

an IFP plaintiff has identified such an employee with sufficient particularity to make locating him or her reasonable, they may pass off the burden of actually doing so to the USMS.[71]

We now adopt the approach of our sister-circuits. Freeman was an incarcerated, convicted murderer. We understand why the probation officers would not want him to know their addresses. Nevertheless, he provided the most up-to-date information he had and repeatedly tried to secure counsel to assist him with service. After four-and-a-half years of motion practice, he finally convinced the District Court to order the government to provide their whereabouts—only to be told that their locations were stored in a government warehouse in St. Louis. He then asked to have USMS retrieve the government files at issue or, alternatively, for an attorney to help him retrieve them himself. In response, the court waited one week to see if an attorney would volunteer, and then dismissed his case. Because Freeman provided the information he had access to, and the government has not shown that service by USMS was unreasonable, dismissal on this ground was an abuse of discretion.

**B.**

The District Court should not have dismissed Freeman's *Bivens* claims for failure to effectuate service. Nevertheless, we will affirm its decision on the alternative ground that these claims plainly fail on the merits.

---

[71] *Id.*

25

To call implied constitutional causes of action against federal officials rare would be an understatement.[72] While the Supreme Court has three times permitted such actions, it has not done so in over four decades.[73] Rather than formally overruling these cases, the Supreme Court has remained content to preserve them as the last of the species.[74] But it has made clear that the *Bivens* line almost certainly goes no further—and that so long as "there is *any* rational reason (even one)" to leave the ball in Congress's court, an implied cause of action is off the table.[75]

In practice, this determination breaks down into two related steps. First, we ask whether Freeman's asserted *Bivens* claim presents a new context that is meaningfully different from the three claims the Supreme Court currently recognizes.[76] It plainly does. Freeman's *Bivens* claim does not concern an illegal search of his home,[77] sexual discrimination

---

[72] *See Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023) (noting that "the Supreme Court has pulled back the reins" on such actions "to what appears to be a full stop and no farther").

[73] *See Bivens*, 403 U.S. at 397; *Davis v. Passman*, 442 U.S. 228, 234 (1979); *Carlson v. Green*, 446 U.S. 14, 19 (1980).

[74] *See Ziglar v. Abbasi*, 582 U.S. 120, 134 (2017) (noting that "it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today," but declining to overrule them due to *stare decisis* and congressional inaction).

[75] *Egbert v. Boule*, 596 U.S. 482, 496 (2022).

[76] *Ziglar*, 582 U.S. at 139–40.

[77] *See Bivens*, 403 U.S. at 389, 397.

by his employer,[78] or the denial of medical care by his jailers.[79] Instead, he asserts that probation officers violated his procedural due process rights by transmitting (and failing to correct) an inaccurate PSR. Freeman analogizes this claim to *Bistrian v. Levi*, in which we sustained a due-process-based *Bivens* claim arising from the failure of prison officials to protect inmates from "a known risk of substantial harm."[80] However, even assuming that analogy holds, we recently recognized in *Fisher v. Hollingsworth* that our decision in *Bistrian* has been abrogated and is no longer good law.[81]

Because Freeman's asserted claim is not an analogue to any recognized *Bivens* claim, we proceed to the second step of our inquiry, asking if "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"[82] Even one such factor precludes a remedy.[83] Following the Supreme Court's directions, we recently decided in *Kalu v. Spaulding* that Congress's enactment of the PLRA (and decision not to include a damages remedy) counsels against expanding *Bivens* to suits arising from a prisoner's

---

[78] *See Davis*, 442 U.S. at 235.

[79] *See Carlson*, 446 U.S. at 16.

[80] 912 F.3d 79, 90–94 (3d Cir. 2018). *Bistrian* was predicated on our pre-*Egbert* belief that *Farmer v. Brennan*, 511 U.S. 825 (1994), in which the Supreme Court seemed to have implicitly recognized the validity of failure-to-protect suits, served as an additional *Bivens*-line case. 912 F.3d at 90–91.

[81] 115 F.4th 197, 203–06 (3d Cir. 2024).

[82] *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136).

[83] *Id*.

conditions of confinement.[84]   That decision (which, like *Fisher*, was issued while briefing was ongoing) straightforwardly bars the relief Freeman seeks.[85]

To his credit, Freeman acknowledges this, conceding in his reply brief that "given *Fisher* and *Kalu*, it is difficult for [him] to show that his claims, as currently alleged, are cognizable under *Bivens*."[86]   Nevertheless, he asks us to remand on the procedural ground that—since the probation officers have not been served—there is no pending motion to dismiss.  We see no reason to take this needlessly serpentine route.  While a District Court may not generally dismiss a complaint before process has been served, IFP suits are an exception.[87]   We will therefore affirm the dismissal of Freeman's *Bivens* claims on the alternative ground that he has

---

[84] *See Kalu*, 113 F.4th at 333 (noting that allowance of such claims "would conflict with Congress's stated purpose in passing the PLRA—namely, to eliminate unwarranted federal-court interference with the administration of prisons" (cleaned up)).

[85] Freeman does not contest that his suit is an "action . . . with respect to prison conditions" as defined by the PLRA.

[86] Rep. Br. at 5.

[87] *See* 28 U.S.C. § 1915(e)(2)(B) (providing that the court shall dismiss an IFP action "at any time" if the court determines that it "fails to state a claim on which relief may be granted").

failed to state a viable claim for relief.[88]

***

For these reasons, we will vacate the District Court's order dismissing Freeman's FTCA claim and remand for further proceedings consistent with this opinion. We will affirm the dismissal of Freeman's *Bivens* claims.

---

[88] Although Freeman is no longer incarcerated, this cannot cure the deficiency in his *Bivens* claim. Our refusal to extend *Bivens* to prisoner-confinement claims in *Kalu* did not turn on whether those claims were formally constrained by a particular provision of the PLRA. *See* 113 F.4th at 333. Instead, our holding rested on the underlying reality the PLRA reflects: extensive congressional regulation of conditions-of-confinement suits, accompanied with no congressional mandate for a free-standing cause of action. *See id.* That reality does not lose its force when a litigant steps outside the prison gates.

MATEY, *Circuit Judge*, concurring in part and dissenting in part.

Statutes mean what they say. Freeman failed to mail his claim to the appropriate agency under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, so I would affirm the District Court's dismissal for lack of exhaustion. And while I join in full the majority's analysis in Part V.B. affirming the dismissal of Freeman's *Bivens* claims, I write separately on the role of the FTCA as a factor that counsels this conclusion.

## I.

The FTCA provides "a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment." *Rinaldi v. United States*, 904 F.3d 257, 273 (3d Cir. 2018). Before suing, a claimant "shall have first presented the claim to the appropriate Federal agency."[1] 28 U.S.C. § 2675(a). That command controls this case. There is no dispute that Freeman improperly mailed his claim to the United States Probation Office for the Eastern District of New York when he should have sent it to the Administrative Office of the United States Courts (AOUSC).

The majority reasons that because Freeman presented his claim to "a component of the appropriate agency," he "*did* present his claim to the appropriate agency." Majority Op. at 8. But that reads away Congress's choice to assign Freeman, and all claimants, the duty to identify the right administrative recipient. By the majority's logic, Freeman's complaint was self-exhausting because he filed it with the federal district court's clerk's office, another component of the AOUSC. Section 2675(a) avoids such absurdities by requiring presentation "to the appropriate Federal agency," not a component or subdivision thereof, § 2675(a), because "Congress thought it preferable that claimants go first to the relevant agency" before proceeding with their FTCA claims,

---

[1] This exhaustion "requirement is jurisdictional and cannot be waived." *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015).

1

*Tucker v. U.S. Postal Serv.*, 676 F.2d 954, 958 (3d Cir. 1982). We lack the authority to upset that preference.

Nor is Freeman excused from following the statute as a pro se litigant since Congress created a single standard for exhaustion under the FTCA, and he must "abide by the same rules that apply to all other litigants." Majority Op. at 7 (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). Whether the claimant is counseled, pro se, or prisoner, the FTCA creates one procedure for presentation.[2] We must apply that directive evenly, as the District Court did when it properly dismissed Freeman's claim for lack of exhaustion.

## II.

While I agree dismissal of Freeman's *Bivens* claims is proper, I write separately to explain why the FTCA is a "special factor" showing "the judiciary may be less suited than Congress to weigh the costs and benefits of a damages remedy." *Fisher v. Hollingsworth*, 115 F.4th 197, 207 (3d Cir. 2024); *accord Goldey v. Fields*, 606 U.S. 942, 944–45 (2025) (per curiam).

Courts have sometimes shied away from this commonsense conclusion based on a misunderstanding of *Carlson v. Green*, 446 U.S. 14 (1980). There the Supreme Court examined the "congressional comments accompanying" the enactment of 28 U.S.C. § 2680(h), which amended the FTCA to extend liability "for intentional torts committed by federal law enforcement officers." *Id.* at 19. The Court explained that "nothing in the Federal Torts Claims Act (FTCA) or its legislative history . . . show[s] that Congress meant to pre-empt a *Bivens* remedy or to create an equally effective remedy for constitutional violations." *Id.* So the Court

---

[2] Freeman, and the majority, point to an implementing regulation providing that "[w]hen a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency" or return the claim to the claimant. 28 C.F.R. § 14.2(b)(1). But, of course, a regulation cannot supersede a statute, and § 2675(a) tasks all claimants with presentment to the appropriate agency. Freeman did not.

could not "hold that Congress relegated respondent exclusively to the FTCA remedy." *Id.* at 23. Several circuits read *Carlson* as foreclosing the FTCA as a special factor,[3] though at least one has not.[4]

But we should not be so hasty in considering *Carlson* dispositive, as I have explained before.[5] The congressional commentary relied on by the Supreme Court—an interpretive choice unlikely to remain relevant—only considered how § 2680(h), not the FTCA as a whole, "should be viewed as a counterpart to the *Bivens* case and its progeny [sic]." S. Rep. No. 93-588 (1973), *as reprinted in* 1974 U.S.C.C.A.N. 2789, 2791. And the Supreme Court accordingly limited its holding, explaining that "§ 2680(h) thus contemplates that victims of the kind of intentional wrongdoing alleged in this complaint shall have an action under FTCA against the United States as well as a *Bivens* action against the individual officials alleged to have infringed their constitutional rights." *Carlson*, 446 U.S. at 20. So while Congress "made it crystal clear" that § 2680(h) and *Bivens* provide "complementary causes of action" for intentional torts, it made no such finding for a negligence cause of action under the FTCA.[6] *Id.* All to say that here, as

---

[3] *See Fields v. Fed. Bureau of Prisons*, 109 F.4th 264, 275 n.3 (4th Cir. 2024), *rev'd*, *Goldey*, 606 U.S. at 945; *Koprowski v. Baker*, 822 F.3d 248, 254 (6th Cir. 2016); *Sargeant v. Barfield*, 87 F.4th 358, 368 n.5 (7th Cir. 2023); *Arcoren v. Farmers Home Admin.*, 770 F.2d 137, 140 n.6 (8th Cir. 1985); *Quintero Perez v. United States*, 8 F.4th 1095, 1105 (9th Cir. 2021); *Robbins v. Wilkie*, 300 F.3d 1208, 1213 (10th Cir. 2002).

[4] *See Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020).

[5] *Cross v. Buschman*, No. 22-3194, 2024 WL 3292756, at *3–5 (3d Cir. July 3, 2024) (Matey, J., concurring) (outlining the Bureau of Prison's administrative grievance process as a special factor weighing against a new *Bivens* context).

[6] The Court also identified four factors "suggesting that the *Bivens* remedy is more effective than the FTCA remedy" to support its "conclusion that Congress did not intend to limit respondent to an FTCA action." *Carlson*, 446 U.S. at 20–21. But that analysis "was ancillary to the central issue of Congressional intent." *Jaffee v. United States*, 663 F.2d 1226,

elsewhere, the "judgment in *Carlson* may survive, but its reasoning does not."[7]

The better view is that "[i]n the absence of a contrary expression from Congress," *id.*, a negligence action under the FTCA is an "alternative remedial structure," which "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action," *Ziglar v. Abbasi*, 582 U.S. 120, 137 (2017). A negligence claim under the FTCA is a clear "reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492 (2022). Freeman proved that point by bringing claims under the FTCA and *Bivens* in a single complaint. So while it is not necessary to resolve this case, I would make clear that the FTCA is a special factor that displaces resort to *Bivens*.

\* \* \*

Freeman failed to present his FTCA claim to the appropriate agency, so I would affirm the District Court's order in full. For that reason, I respectfully dissent in part.

---

1244 n.5 (3d Cir. 1981) (en banc) (Adams, J., concurring in part and dissenting in part).

[7] *Cross*, 2024 WL 3292756, at \*3 (Matey, J., concurring).